Troy and Boston Railroad Company *v.* Tibbits.

---

THE TROY AND BOSTON RAILROAD COMPANY *vs.* GEORGE M. TIBBITS.

18b    297
h 39 Mis⁷ 84

Payment of the calls made upon the capital stock of a railroad company may be enforced, by an action upon the undertaking of the stockholder, notwithstanding the statute authorizes a *forfeiture* of the stock, in case of nonpayment.

The obligation of actual payment is created by a subscription to a capital stock, unless plainly excluded by the terms of the subscription.

An individual does not become a member and stockholder of a railroad company under the general railroad act of 1848, by the act of subscribing a preliminary paper, previous to the organization of the company, by which he agrees to take the amount, in capital stock, placed against his name; without subsequently affixing his signature to the articles of association, or subscribing to the capital stock, in the books directed by statute to be opened after the corporation is formed.

Nor can a recovery be had upon his subscription to such preliminary paper, for calls made upon the capital stock of the company.

The only modes prescribed by the statute for becoming a corporator and stockholder in a railroad company are, originally subscribing the articles of association, or, after the company is incorporated by the filing of the articles, by subscribing to the capital stock in the books opened by commissioners.

It is only the *stockholder,* created in one or the other of these modes, from whom

the directors of a company formed under the act of 1848, are authorized to require payment.

An informal subscription, or promise to take stock, prior to the signing of the articles of association, has no legal vitality, standing alone. It is a mere provisional act, inoperative unless pursued through the remaining forms of the statute.

Of itself it secures no right of membership, present or future, to the subscriber; and, it is not essential to a regular organization of the company, and imposes no legal obligation upon the company to issue stock to the amount named therein, or upon the subscriber, to pay for it.

The general railroad law of 1848, confers no power to make conditional subscriptions; and such a subscription is contrary to public policy.

A condition, annexed to a subscription, which provides for a dividend by way of interest, to each paying subscriber, until the full completion of the road, is illegal and void, as contravening public policy.

So of a condition imposing an unauthorized limitation upon the power to call in stock, conferred on the directors by the statute.

THIS was an appeal by the defendant from a judgment entered against him at the circuit, upon the verdict of a jury.

*N. Hill, Jr.*, for the plaintiffs.

*W. A. Beach*, for the defendant.

*By the Court*, WRIGHT, J. This action was brought to recover against the defendant, as an alleged subscriber, in the sum of $20,000, to the plaintiffs' capital stock. The calls were made at various periods, from May, 1850, to February, 1851. In the articles of association organizing the company, the defendant was named as a director, and subscribed thereto fifteen shares. This latter subscription, it was admitted, had been paid to the plaintiffs, prior to the commencement of the present action.

The defendant (who was not among the applicants to the legislature for the act declaring the public utility of a railroad, on the route subsequently adopted by the plaintiffs,) in May, 1849, signed a paper in circulation in the county of Rensselaer, headed "Troy and Boston railroad," which, after reciting the fact of the passage by the legislature of the act to determine and decide the public utility of a railroad from the city of Troy to the

Troy and Boston Railroad Company *v.* Tibbits.

easterly line of the county of Rensselaer, and also the general act "to authorize the formation of railroad corporations," was to the import following: that we, the subscribers associated in this enterprise, do hereby severally agree to take the amount in capital stock placed against our names respectively, to be divided into shares of one hundred dollars each, upon the conditions, 1st. That the subscribers may, at any time, choose directors and organize the company, by giving three days' notice of the time and place of meeting for that purpose; but the construction of the road shall not be commenced until four hundred thousand dollars are subscribed. 2d. No more than ten per cent of the stock shall be called for in any one month, nor more than thirty per cent during the year 1849. 3d. Interest shall be allowed the stockholders upon all sums assessed and paid in, from the day of such payment until the proposed railroad is completed and put in operation; and such subscriber shall have the privilege at any time of paying the whole or any part of his stock, and shall receive interest thereon, in like manner, at seven per cent per annum. Against the name of the defendant, subscribed to this paper were placed, "*shares* 200, *amount* $20,000." At this time the plaintiffs had no corporate existence, and it was not until November, 1849, that articles of association were signed, and the necessary steps taken to create the plaintiffs a corporation, under the act of 1848, "authorizing the formation of railroad corporations." Upon the trial at the circuit, the plaintiffs introduced this paper in evidence, and sought to recover upon it against the defendant, as a corporator by virtue thereof, and as subscriber to their capital stock to the amount of $20,000. On the case as made by the plaintiffs, the counsel for the defendant moved that they be nonsuited; assigning various grounds, some of which will be noticed hereafter; but the judge holding the circuit denied the motion, and held and decided that the paper above referred to was a valid and obligatory instrument in itself, upon which the defendant was liable in the then action; and that the signature of the defendant to the articles of association, and the acceptance thereof by the plaintiffs, furnished no evidence of a waiver or abandonment of the prelimi-

nary paper : and directed the jury to find a verdict for the plaintiffs for a sum equal to the amount of the several calls alleged in the complaint, and interest thereon from the time they respectively became due and payable ; making the aggregate sum of $19,237.82. The recovery was put distinctly upon the ground that the legal effect of the defendant's subscription to the instrument, called in the case a "*preliminary paper*," was to confer upon him the rights and obligation of a member and stockholder of the corporation immediately upon its creation, no certificate or new subscription being necessary ; and further, that the promise therein was to pay such calls as should be made by the corporation to be created, and expressed a sufficient consideration.

If the effect of the defendant's subscription to the paper of the date of May, 1849, was to constitute him a member and stockholder, to the amount of such subscription, of the plaintiffs' corporation, upon its springing into legal existence, there would probably be no validity in the point that the plaintiffs' only remedy is a forfeiture of the stock. The statute authorizes a forfeiture, but this is to be treated as a cumulative remedy. Payment may be enforced by action on the undertaking of the stockholder. So, also, there would be no force in the objection that there is no express agreement to pay for the stock subscribed. It seems to be well settled that the obligation of actual payment is created by a subscription to a capital stock, unless plainly excluded by the terms of the subscription. But the legal effect of executing the preliminary paper must have been to impose on the defendant the obligations and liabilities of a corporator and stockholder ; else there could have been, properly, no recovery. This effect, if produced at all, must have followed by force of the statute under which the plaintiffs' company was formed. If the paper, standing by itself, was not wholly inoperative and invalid as between the subscribers to it, it certainly could not be enforced by the plaintiffs in this way, and in this form of action. At common law, and not considered as a necessary part of a scheme for creating and imparting vitality to railway corporations, it was void for want of mutuality. Construed as an agreement to take stock, there is no consideration, or corresponding

Troy and Boston Railroad Company *v.* Tibbits.

obligation on the part of the plaintiffs to give it. Nor, indeed, was there a promisee *in esse*, to do that which forms the consideration for the promise of the defendant. (1 *Comst.* 581. 12 *Barb.* 502.) So that, if the preliminary subscription is to be sustained at all, it is by force of the statute and some consideration to be gathered from an implied agreement on the part of the railroad company to give stock. The ruling and direction at the circuit were probably right, if the defendant became a member and stockholder of the plaintiffs' corporation by the act of subscribing the preliminary paper, and he had the right to demand stock from the company to the extent of the subscription; otherwise not. The leading question consequently is, did the defendant become a member and stockholder of the Troy and Boston Railroad Company, by the act of subscribing the paper of the date of May, 1849, and without subsequently affixing his signature to the articles of association or subscribing to the capital stock in the books directed by statute to be opened by commissioners after the corporation is formed?

The plaintiffs were incorporated under the general railroad act of 1848. We are therefore to look primarily to that statute, to determine the relation which the parties sustain to each other, and their rights, obligations and liabilities. If the act declares, expressly or by reasonable implication, who are members or corporators, and defines who are *stockholders*, and from whom the directors are authorized to require payment as such, it is controlling. In such a case the common law rules of membership would not apply. This being an attempt to enforce an alleged statute liability, created by the act authorizing the incorporation, and binding on its members, and not strictly a question whether the subscription was a valid promise at common law, made to a proper party, the case mainly depends on a construction of the statute.

In construing the law under which the plaintiffs acquired a corporate existence, with the view of determining who are corporators and stockholders, but little is left to implication. The language employed in the first section of the act, to express the legislative intention, is slightly equivocal; but, beyond that, all

is plain and perspicuous. The act provides that twenty-five persons, or any greater number, may be formed into a corporation for the purpose of constructing, owning and maintaining a railroad, by complying with certain specified requirements. No step can be taken towards the organization of the company, until stock to the amount at least of one thousand dollars for every mile of the road intended to be built is in good faith subscribed, and ten per cent paid thereon. This is a precedent condition to the subscribers electing directors and severally subscribing articles of association. But the subscription of $1000 per mile, the choosing of directors, to be named in the articles, subscribing the articles, and paying the ten per cent, may be cotemporaneous acts. Indeed the act seems to contemplate that they are to be performed simultaneously. The names of the persons chosen as directors are to be inserted in the articles of association, and the ten per cent on the amount of stock subscribed is to be actually paid to the directors named in such articles. So also the ten per cent required to be paid, is by the second section of the act made to be on the amount of stock subscribed to the articles of association. It would be difficult, if not impossible, to take singly and successively the steps pointed out in the first and second sections of the act for the organization of the company. When any number of persons, not less than twenty-five, subscribing an amount of stock, of at least $1000 for every mile of the road intended to be built, shall elect directors, frame articles of association, severally subscribe thereto their names, place of residence, and the number of shares of stock taken for each person; actually and in good faith pay in cash to the directors, named in the articles of association, ten per cent on the amount of the stock subscribed thereto; cause to be indorsed upon or annexed to such articles, an affidavit made by at least three of the directors, that stock to the amount of at least $1000 for every mile of the contemplated road has been subscribed, and that ten per cent on the amount has been actually paid in; and file the articles of association in the office of the secretary of state; the persons who have so subscribed the articles, and all persons who shall from time to time become stockholders in such com-

pany, shall be a body corporate, by the name specified in such articles. In the articles of association, five commissioners are to be named to open books of subscription to the stock. These commissioners, after the associates have perfected their incorporation, under the provisions of the act, are required to open books of subscription to the capital stock of the company, and keep them open, until all the capital stock shall be subscribed, if the corporation shall so long exist. As soon as practicable, after such capital stock shall have been subscribed, the commissioners are to appoint a time and place for the meeting of the stockholders to choose directors; they are made inspectors of the first election of directors, and are required to deliver to the directors then chosen, or to the treasurer of the company, all moneys received by them on subscriptions to the capital stock, and all books and papers in their possession relating to such subscriptions; and it is made lawful for the directors to call in and demand from the stockholders, respectively, all sums of money by them subscribed, at such times and in such payments and installments as they shall deem proper. (*Laws of* 1848, *chap.* 140, §§ 1, 2, 4, 5, 6, 7, 9.) The statute, it is to be observed, declares in express terms who are corporators. They are the persons who have subscribed the articles of association, and their successors or those who may, from time to time after the organization is perfected, become holders of the capital stock of the company. No person can be a member unless he be a stockholder; and every stockholder is a corporator. The modes prescribed, and only these, for becoming a corporator and stockholder, are, originally subscribing the articles of association, or, after the company is incorporated by the filing of the articles, by subscribing to the capital stock in the books opened by commissioners. It is the *stockholder,* created in one or the other of these modes, from whom the directors are authorized to require payment. If an informal subscription be contemplated, prior to signing the articles, I cannot perceive that the statute intended to confer on it, as a distinct thing, any legal vitality : or at least that the legislature designed the effect of such a subscription to be, to constitute the subscriber thereto a corporator and stock-

holder in a company not having yet a legal existence. Such preliminary subscription seems but a provisional act, inoperative, unless pursued through the remaining forms of the statute. Of itself it secures no right of membership, present or future, to the subscriber. As a distinct thing it is not essential to a regular organization of the company. The persons who preliminarily subscribe are expressly required by the statute to sign the articles of association, by which alone the company can be organized ; and not only affix their names to the articles, but also the number of shares of stock taken by them. Why subscribe to the articles the amount of stock taken in the company, if what the legislature intended should be a valid binding subscription—a contract to take stock from a corporation afterwards to be created—had been previously made ? From an examination of the statute it seems quite clear to me that, without any preliminary paper, the required number of persons might subscribe articles of association to the extent of $1000 per mile, pay to the directors named in such articles the ten per cent, furnish proof of such payment, and file the articles and proof in the office of the secretary of state, and the company would be organized. The ten per cent required to be paid is required expressly to be paid on the stock subscribed to the *articles ;* not to a preliminary paper, or any where else. Reading the first and second sections of the act together, it is apparent that no preliminary subscription, as a precedent, distinct thing to the articles of association, is required in perfecting the organization of the company ; but that the law is satisfied if the required number of persons, adopting names to be inserted in the articles as directors, at once subscribe the articles of association for an amount of stock of at least one thousand dollars for every mile of the road intended to be built, and pay the ten per cent on such subscription. If the preliminary subscription were a vital and necessary part of the organization, then all the subscribers should sign the articles. The law says they must sign ; at least, they only who do sign are corporators. It may be urged that this construction renders the preliminary subscription but an idle ceremony ; and that we should, if possible, avoid a construction which attributes folly to

Troy and Boston Railroad Company *v.* Tibbits.

the legislature. But acts of the legislature are not invariably founded in wisdom, or the law makers' intention expressed with clearness and perspicuity. It is only by adopting the notion that the legislature intended, as a primary and necessary step, before subscribing articles of association, that twenty-five or more persons should formally go through the ceremony of signing a paper as an independant act, agreeing to take stock in a contemplated railroad, that any folly is discoverable in the legislative scheme for organizing railroad corporations. There was, however, a preliminary subscription in this case ; and all we are now called upon to decide is, whether the promise of the defendant, evinced by it, can be enforced by the plaintiffs in this form of action.

My deductions from the act under which the plaintiffs derived their corporate existence are, 1st. That the preliminary paper, on which this action is sought to be sustained, was not an essential and indispensable part of the machinery devised by the legislature for bringing the corporation into legal existence, nor does its vitality depend in any measure upon it. Consequently it neither controls nor affects the relation which the parties to this suit sustained to each other, nor imposes any obligations upon the defendant, which the plaintiffs as a corporation have the legal right to enforce. 2d. That the act explicitly defines who are corporators and stockholders, and from whom the directors have, as stockholders, the right to demand payment. These only are the persons who subscribe the articles of association, or who, subsequently to perfecting the organization of the company, subscribed to its capital stock. No other description of persons can be charged as stockholders by a corporation formed under the general law of 1848. It is an ingenious theory of the plaintiffs' counsel, that the preliminary subscription is the contract of the members of the association with each other, while the articles of association are the charter or contract with the state ; and in the former and not the latter, which does not remain with the association, we are to look for the stock subscription. But the difficulty with the theory is that it cannot be sustained in all its parts and give a reasonable construction and effect to the stat-

ute. Being right in these conclusions, the point fails, that the preliminary subscription became obligatory upon the defendant *after* the articles were filed, as much so as if he had *then* subscribed: and that in this respect it resembles that class of instruments which rest in *proposition* or *escrow* until some future event, and then enure as obligatory. But did we err in the conclusion that the statute in effect determines who are members and stockholders of the corporation, and from whom the directors may demand payment *as such*, and that the act of a formal preliminary subscription is not vitally essential in the organization of the company, upon what principle of law can an instrument of the character counted upon in this action be said to have become an obligation, to be enforced by the plaintiffs, after their incorporation? In what way is it made to enure to them—the legal *modus operandi?* We are told that it may be considered in the light of a *proposition,* but to whom is the proposition made? There is an inconsistency in the idea of a proposition to a company not in existence. It is erroneous to say that the statute executes it; and in this case, where is the evidence of acceptance, or what imposes any obligation on the plaintiffs to give the defendants the stock? Had this company, formed after the defendant's subscription of May, 1849, and after having accepted, acted upon and received his subscription to the articles of association, repudiated the preliminary paper, I think the defendant would have been remediless. *It is either a proposition* between the signers, or to the state, and not to a company—a thing not yet existing. Regarded as a proposition to a company not formed, and which may or may not be created, it would be without mutuality, and therefore void, unless the statute infuses vitality into it. (21 *Wend.* 139.) But assuming that the view adopted at the circuit be correct, that the statute contemplated a preliminary subscription, and intended to confer some sort of legal vitality upon it, is the paper in action a preliminary subscription under the act of 1848? I think not. Its provisions indicate that it was not so considered by the signers. If a preliminary subscription be contemplated, it must be an *absolute* one, depending on no contingencies in hostility to the act or

Troy and Boston Railroad Company *v.* Tibbits.

against public policy.   The law of 1848 confers no power to make conditional subscriptions, and such a thing is contrary to public policy.   (*Butternuts Turnpike* v. *North,* 1 *Hill,* 518.)   It is quite apparent that some of the conditions on which the preliminary subscription in this case was made, are against public policy.   One of the conditions is an unauthorized limitation upon the power to call in stock, conferred on the directors by the ninth section of the act of 1848; and another condition, which is more mischievous and contrary to the act, provides for a dividend by way of interest to such paying subscribers, until the full completion of the road, at the expense of non-paying subscribers.   Besides, the non-construction of a portion of the road for five years (as may lawfully happen) enables stockholders, contrary to the 14th section of the act, to draw a dividend in the name of interest at the rate of seven per cent per annum, although the company may be insolvent.   The corporation having power to borrow money, may thus secure a profitable investment to stockholders at the expense of creditors, and without personal liability under the act.   The paper in action, therefore, in this case, I think is not within the provision and protection of the statute; and even had the validity of preliminary subscriptions, in themselves, been expressly declared, this paper, at all events, is not such as the statute authorizes; and contravening public policy is void.

We are consequently of the opinion, that the learned judge at the circuit erred in holding that the railroad act of 1848 enforces an obligation of the description counted on in this case; and that the paper of the date of May, 1849, signed by the defendant, was "a valid and obligatory instrument in itself, upon which the defendant was liable in the then action."   Upon an examination of the railroad act, and putting what we deem a reasonable and not fanciful construction upon its provisions, defining and declaring the rights and obligations of parties to be affected by it, we are led to the conclusion that the affixing of the defendant's signature to such a paper did not constitute him a member of, or stockholder in, the plaintiffs' corporation; that it was not a subscription to the plaintiffs' capital stock, nor an instrument legally imposing on the plaintiffs the obligation to

give stock to the extent named therein ; and that the defendant did not, by thus subscribing, become the *stockholder* defined in the act of 1848, from whom alone, in the character of stockholders, the directors are authorized under that act to require payment. Instead of directing, at the circuit, a verdict for the amount of the several calls of such stock, and interest thereon, the judge should have nonsuited the plaintiffs.

The cases of *Stanton* v. *Wilson*, (2 *Hill*, 153,) and *Hamilton and Deansville Plank Road Co.* v. *Rice*, (7 *Barb.* 157,) are not in conflict with the views above expressed. Indeed, as authority in this case, they are inapplicable. Both may be regarded as enunciating correct legal principles, without intrenching upon the soundness of the conclusions arrived at in the present case. In *Stanton* v. *Wilson*, the defendant had signed the articles of association ; and at the foot of which he subscribed for fifty shares of stock. The articles, though dated and subscribed before, declared in terms that the association should not commence until 1st January, 1839, and that the subscribers, the defendant and others, had associated according to the statute. All that the case decided was that, in legal effect, the contract of the defendant was made on the 1st of January, and was then to pay the corporation the amount subscribed. In *The Hamilton and Deansville Plank Road Co.* v. *Rice*, a controlling feature of the decision was, that the defendant, though subscribing before, after the organization of the company had received from the plaintiffs, and accepted, a certificate of stock. The decision in *Lexington and West Cambridge Railroad* v. *Chandler*, (13 *Metcalf*, 311,) was under a special act of incorporation providing no rules of membership, and upon the ground that the defendant had constituted himself a corporator according to the common law. That part of the decision which has any application to the present case was upon a point not strictly before the court.

The decision at the circuit was placed distinctly and wholly upon the ground, that what was called the " preliminary paper" was a valid and obligatory instrument in itself, upon which the defendant was liable in the then action. As a matter of law, he

Troy and Boston Railroad Company *v.* Tibbits.

was adjudged liable, on the paper, to the plaintiffs, in the form of action set forth in the complaint, and a verdict was directed by the court for the amount of the several calls, with interest. The judgment in the case, therefore, cannot be upheld upon the grounds, either that the defendant's participation in the subsequent organization and proceedings of the company constituted him a member, or that the corporation having been induced by him to act and assume liabilities, an implied promise is raised, against him, to pay his subscription. The case was decided at the circuit upon neither of these theories. The complaint alleged no such cause of action. There was neither averment nor proof that the plaintiffs were induced to act, or assume any obligation, on the faith of the defendant's preliminary subscription. It was shown that he was a subscriber to the articles of association, to the extent of $1500, and it was admitted that that subscription had been fully paid. All the acts of the defendant, so far as they related to the plaintiffs, are referable to his subscription to the articles. Indeed, had the defendant been permitted to go to the jury upon any question of fact, the acceptance by the plaintiffs of his signature to the articles of association, for $1500, and the receipt of such subscription, would have been strong proof that the plaintiffs did not act in any reliance upon the undertaking of the defendant of May, 1849. But the court having decided, upon the motion for nonsuit, that a liability arose upon the " preliminary paper" alone, the defendant was precluded from raising any question of fact, or from producing proof of his own acts, and the inducements, if any, thereby offered to the plaintiffs. If these collateral questions of fact were of any influence they should have been submitted to the jury. But, in the view taken by the judge, they were not. Holding the " preliminary paper" to be a valid subscription, to the extent named therein, to the plaintiffs' capital stock, and that it might be enforced by the plaintiffs in their corporate capacity, (the subscription to the articles of association and the acceptance thereof furnishing, in his opinion, no evidence of a waiver or abandonment of the preliminary paper by them,) he

withdrew every controverted question of fact from the jury, and directed a verdict accordingly.

The judgment of the circuit court must be *reversed*, and a new trial ordered, with costs to abide the event.

[ALBANY GENERAL TERM, September 4, 1854. *Harris, Watson* and *Wright*, Justices.]