### The Poughkeepsie and Salt Point Plankroad Company v. Griffin.

Under the general plankroad act (ch. 210 of 1847), those only who subscribe the articles of association are entitled to stock or compellable to pay for the same.

The preliminary subscription and other steps prior to the signing of the articles of association are provisional and inchoate, creating no fixed right and imposing no obligation on the parties.

*It seems* that one otherwise liable as a corporator would not be discharged by reason of the legislature's having extended the time for laying plank and permitting the corporation, in the meantime, to act and collect tolls as a turnpike company. *Per* DENIO, J.

APPEAL from the Supreme Court, where the plaintiffs sued the defendant to recover $500, for which it was claimed he was liable as a subscriber to the capital stock of the plaintiffs' company. The plaintiff gave in evidence an agreement, dated March 8, 1853, purporting to have been signed by the defendant and others, by which the subscribers agreed to take and pay for the number of shares of stock, at fifty dollars a share, set opposite their names, to the directors of a company thereafter to be formed,— under the general act of May 7, 1847, authorizing the formation of plankroad and turnpike corporations,— for the purpose of constructing a plankroad from the village of Poughkeepsie to Salt Point, in the town of Pleasant Valley, in Dutchess county, payable at such time and place as the directors might direct. The paper mentioned the total amount of the capital stock required, and the number of shares. The number of ten shares was affixed to the defendant's name. The heading of the paper was in these words: "The Poughkeepsie and Salt Point Plankroad, with the privilege of extending the same to Clinton Corners." The plaintiff gave in evidence its articles of association, which bore date March 22, 1853, and were signed by a number of persons, not including, however, the defendant. Other documents,

and oral evidence, were produced to show that the plaintiff was duly incorporated under the act, but no question was made upon that point. The subscription was not in the defendant's handwriting, but his name was written by one Cornell, in his presence, and by his direction, as it was alleged. A question was made upon the execution of the instrument; the defendant insisting that he authorized his name to be signed only on condition that the road should be located on a certain route, and that it was laid out on another route. But the judge, before whom the case was tried without a jury, found that the defendant did subscribe for ten shares of stock.

At the close of the evidence a number of objections were taken to the plaintiff's right to recover, but they were, for the most part, determined by the judge's finding upon the question of fact.

One, however, arose, out of an act of the legislature of 1854, which was admitted to have been passed on the application of the plaintiff. That act is in the following words: "Section 1. Whenever the Poughkeepsie and Salt Point Plankroad Company shall construct and grade their road, or any part thereof, in accordance with the statute in relation to turnpike companies, and shall obtain the certificate of a majority of the inspectors of turnpikes of the county of Dutchess to that effect, then said company may erect tollgates upon their road, and receive the same tolls as allowed by law to turnpike companies. Section 2. The said company, until they plank their road shall be subject, in all respects, to the provisions and regulations relative to turnpike companies, in chapter 210 of 1847, and in other laws amendatory and supplementary therto, and shall be invested with all privileges and rights given by said acts to turnpike companies. Section 3. The said company shall have five years further time to conplete their road than now allowed by law."

It was admitted that the road had not been planked; but turnpike gates had been erected pursuant to the act. The defendant's point was that he was discharged from his subscription by the passage of the act, because, as he insisted, it

changed the nature of the corporation and of the contract between the parties. The judge refused to hold that this was a defence, and the defendant's counsel excepted. The report was in favor of the plaintiff for the amount of the subscription, with interest, and the defendant appealed.

*John K. Porter,* for the appellant.

*Amasa J. Parker,* for the respondent.

DENIO, J. The question which naturally presents itself in the outset of this controversy is, whether the defendant has so far committed himself by signing the undertaking set out in the case, as to be unable to retract; or whether, as is insisted in his behalf, it was necessary for him to subscribe the articles of association in order to bind himself to the payment of his subscription. This depends upon an examination of the general act to provide for the incorporation of plankroad companies and of turnpike road companies. (Laws of 1847, ch. 210.) It declares in the first place that any number of persons, not less than five, may form themselves into a corporation by complying with the requirements afterwards specified. It then provides that a certain notice shall be published pointing out where books for subscribing to the stock shall be opened, and then proceeds thus: "And when stock to at least the amount of five hundred dollars for every mile of the road so intended to be built shall be, in good faith, subscribed, and five per cent paid thereon, as hereinafter required, then the said subscribers may, upon due and proper notice, elect directors for the said company; and thereupon they shall severally subscribe articles of association, in which shall be set forth the name of the company," &c. [naming certain other particulars to be contained in it.] "Each subscriber to such articles of association shall subscribe thereto his name and place of residence, and the number of shares taken by him in said company." It then provides for the filing of the articles in the office of the secretary of state, and proceeds: "And thereupon the persons who

The Poughkeepsie and Salt Point Plankroad Company *v.* Griffin.

have so subscribed, and all persons who shall, from time to time, become stockholders in such company, shall be a body corporate," &c. The paper which the defendant signed did not contain the matters required to be set forth in the articles, but was in its character preliminary to the articles. But the defendant never went any further. He did not, so far as it appears, participate in the choice of directors, and his name was not subscribed to the articles of association. The result of the best reflection which I can give to the matter is, that no legal significancy is predicable of the signing of the preliminary paper. The theory seems to me to be this: The parties designing to form a company are to ascertain in the first instance who will unite with them in the enterprise. It was proper that the public generally should have an opportunity to join, to prevent the secret or clandestine formation of a company to control a public thoroughfare. Hence the requirement that notice should be given by advertisement of the opening of books of subscription. The persons desirous of taking part in the enterprise were, it is to be inferred, to subscribe in the books so to be opened, and to make the preliminary payment. When this process was gone through with, and the books were examined, it would be seen who the individuals were who had thus signified an intention of becoming interested in the project. The persons thus ascertained as the undertakers of the enterprise, are thus (after due notice, so that nothing shall be done behind the back of any one,) to do two things: elect directors and sign articles of association. These were to be, I think, simultaneous and concurrent acts. The preliminary subscribers are to elect directors, but the articles are to state how many directors there shall be, and to mention the names of those first chosen. It is clear that the election of directors cannot take place until the terms of the articles shall be agreed on; and the authors of the articles and the constituents who designate the directors, are the same persons. As neither of the acts can be fully completed until the other is consummated, it follows that neither can precede the other, but that they must be done concurrently. Now

suppose one of those who,. by signing the preliminary subscription, has agreed to become a corporator refuses to go any further. The others, who chose to adhere, if enough are left, can doubtless go on and complete the organization by electing directors and signing the articles; but can they hold the one liable who has changed his mind? The statute declares that the subscribers to the stock shall severally subscribe the articles of association; and, further on, that "those who have so subscribed, and all persons who shall from time to time become stockholders in such company, shall thereupon be a body corporate." The other persons, besides those who have so subscribed ( that is who subscribed before the filing of the articles) are such as shall subsequently take stock, or who shall become shareholders by transfer from other shareholders. There is an invincible implication that only those who sign the articles, and such others as subsequently acquire a right to stock shall be members of the corporation. I do not see how it is possible that one who has stopped short, before signing the articles, can be a corporator, or be entitled to any stock; and if he is not entitled to stock, he certainly ought not to be compelled to pay for any. It may very well happen that the amount subscribed for one of these roads will greatly exceed the amount required, or which can be used in constructing the road. No method is pointed out by the statute for distributing the stock, and yet in such a case the project would fail unless some method could be fallen upon to designate those who should be stockholders, and the number of shares which each should have. Suppose this should be accomplished by lot or by mutual agreement, no one would contend that those who were left out would be obliged to pay their primary subscription, or that those who were taken in for a less amount than that which they had subscribed, would be obliged to pay for the shares they could not have at the time of signing the preliminary subscription, supposing that to be a different thing from the subscription to the articles, there would be no shares, and no designated amount of capital stock; and no one could say what amount of money each separate share would repre-

sent; for these are matters to be afterwards ascertained, and to be specified in the articles of association, and cannot in the nature of things have any existence until the articles are signed. Yet the defendant in this case is called upon to pay five hundred dollars, as the price of ten shares of the stock. If it was the preliminary subscription which was to constitute the obligatory instrument, there would be no necessity of repeating the undertaking in the articles; yet the subscribers to the articles are required to state the number of shares taken by them respectively. Without indulging in any further criticism upon the language of the act, I conclude that the system established by it does not contemplate any binding obligation until the parties who intend to be shareholders come together and designate the directors,—who, as their agents, are to manage the concern,—and at the same time agree upon the amount of the capital stock, and the other particulars required to be stated in the articles. Having thus established the elements which go to make up their respective rights and liabilities, they give effect to the arrangement by signing the articles in which these elements are stated ; and then, and not before, a personal obligation is created against each subscriber to pay for the shares which he has taken. The steps which are required to precede this are provisional and inchoate. Their only object is to bring these persons together who are ultimately to form the corporation, in order to effect an organization and execute the contracts for taking and paying for the stock. Any one who withdraws here, or is allowed to drop out of the enterprise before this first binding transaction takes place, has failed to become a shareholder and has no interest in or liability for any stock which has been or shall be created.

There is a great similarity between the plankroad act, and the general act for the incorporation of railroad corporations, passed in the year 1848 (ch. 140). So far as the present question is concerned I think the provisions are identical. In *The Troy, &c., Railroad Company* v. *Tibbets* (18 Barb., 297), the Supreme Court sitting in the third district held, after great consideration, that the preliminary subscription under that act

*did not entitle* the subscriber to stock or bind him to the payment of the price. It was looked upon substantially in the light in which I have considered it, as preliminary and inchoate and of no legal significancy except to bring the parties who were to act together in the formation of the company in correspondence with each other, so that they might choose directors and agree upon the constitution of the corporation. The same doctrine was reiterated in *the same plaintiff* v. *Warren.* (Id., p. 310.)

If I knew that my brethren would concur with me in these views, I should not be obliged to express any opinion upon the other questions which the case presents.

The substance of the act of 1854, is that this corporation, which had then been formed, should have five years' time to complete its road beyond that allowed by the existing law, and that until it should be completed by the laying down of plank, it might erect gates and collect tolls according to the rates prescribed in respect to turnpike companies, whenever they should procure the road to be graded and should have it inspected by the inspectors of turnpike roads. In the meantime they were to enjoy the legal rights and privileges of turnpike companies, and to be subject to the legal requirements respecting them. It is certainly possible that this act was obtained simply as a cover for abandoning the plan of a plankroad, and to enable the directors to establish a turnpike. This, however is not the presumption of law. On the face of the enactment it simply conferred on the corporation an indulgence which it would not otherwise possess, of postponing the completion of the road for a considerable time, and of so managing it that it should be a source of profit in the meantime. I think this was within the scope of the reservation contained in the general act which declares that the legislature may, at any time alter, amend or repeal it, and may amend and repeal any corporation which may be formed under it. A much more material alteration was made in the general banking law, which was held by this court to be within the scope of the reservation contained in that act. (*Matter of Oliver Lee & Co's Bank,* 21 N.

Y., 9, and see also the cases therein referred to.) The doctrine of that case is that the usual reservation contained in the general acts for the formation of corporations, authorizes changes in the legal prescriptions bearing upon corporations which had been created under them, to the same extent as though such corporations had been established by a special legislative charter containing in itself a similar reservation. Under this rule there can be no doubt but that the act of 1854, was a legitimate exercise of the power reserved in the plankroad act. It consequently discharged no obligation that the defendant was under to pay the stock in the plaintiff's company. Being of the opinion, however, before expressed that he had made no valid contract to take and pay for the stock, I think the judgment of the Supreme Court charging him with the price should be reversed.

All the judges (except SELDEN, J., who was absent), concurring,

Judgment reversed and new trial ordered.