JANUARY TERM, 1863. 13

Kenosha, Rockford & Rock Island R. R. Co. vs. Marsh.

KENOSHA, ROCKFORD & ROCK ISLAND RAILROAD COMPANY
vs. MARSH.

17    13
52 LRA 386n

A radical, fundamental change in the character of the enterprise in which a rail-
road company was engaged when it obtained a subscription to its stock, releases
the subscriber from his liability.

The fact that such change is made under a grant of power by amendment to the
charter, in a state where the legislature is empowered to alter or repeal acts of
incorporation at pleasure, does not affect the application of this rule.

Whether the mere consolidation of one road with another, under such amendment
to its charter, would release non-assenting stock subscribers, *quære*.

Chap. 60, Pr. Laws of 1853, incorporated a company with power to construct a rail-
road from the city of Kenosha to the village of Beloit, and connect with any
other railroad running from Rock river to the Mississippi. Chap. 22, Pr. Laws
of 1857, declared that it should not be necessary for said company to construct
a railroad to Beloit, but it should have power to construct the railroad author-
ized by the former act, from Kenosha to a point in the state line at or near Ge-
noa, in Walworth county. The company having made the change in its line
thus indicated, *Held*, that the enterprise thus undertaken was so far a new one
that a stock subscriber who did not assent to the change was not liable on his
subscription.

APPEAL from the Circuit Court for *Kenosha* County.

The case is stated in the opinion of the court so far as is ne-
cessary for an understanding of the only point decided. The
circuit court, on motion of the defendant, non suited the plain-
tiff.

*J. J. Pettit*, for appellant, to the point that the defendant was
not released from his subscription by the change of route or
consolidation of companies without his assent, cited Pierce on
Am. R. R. Law, 78–90, and notes; id., 94–98; *Buffalo & N. Y.
City R. R. Co., vs. Dudley*, 14 N. Y. R., 348, 354–5; *S. & S.
Plank Road Co. vs. Thatcher*, 1 Kern., 102; 17 Barb., 581; 21
id., 454.

*Webster & Schoff*, contra, cited *Hartford & N. H. R. R. Co. vs
Croswell*, 5 Hill, 383; *Troy & Rutland R. R. Co. vs. Kerr*, 17
Barb., 604; *Banet vs. A & S. R. R. Co.*, 13 Ill., 504; *Carlisle vs.
R. R. Co.*, 6 Ind., 316; *Middlesex Turnp. Corp. vs. Locke*, 8
Mass., 268; *Union Locks and Canals vs. Towne*, 1 N. H., 44.

*By the Court,* PAINE, J. This action was brought upon a subscription to the capital stock of a railroad company chartered to build a road from the city of Kenosha to Beloit. Chap. 60, Pr. Laws of 1853. Afterwards, by chap. 22, Pr. Laws of 1857, the legislature changed the enterprise from that of building a road to Beloit, to one of building a road to the state line between this state and Illinois, at or near Genoa, in Walworth county. This change was obtained by the company, which acted under it, and, under still another law, consolidated with an Illinois company, which was authorized to build a road from Rockford in that state to the same point on the state line. This action was brought by the consolidated company.

After the evidence of both parties had been introduced, the defendant moved for a nonsuit, for the reason, among others, that this was such a radical change in the enterprise as released him from his subscription. The motion was granted upon another ground, but we think it was properly granted upon this.

Considered independently of the effect of the power reserved in our constitution to the legislature, to amend or repeal the charters of all incorporations, all authorities concur in stating the general rule to be, that a radical, fundamental change in the character of the enterprise releases the stock subscriber who does not assent. In applying this rule many cases are found where the particular change made was held not to be of this character. But we think the plain implication from the reasoning in all of them is, that a change like the one here in question would be so held. Thus in *Banet vs. R. R. Co.*, 13 Ill., 504, the change made only straightened the original route, leaving it between the same termini. The court held that this was not a radical change, but that it left the enterprise substantially unchanged. But they say expressly that if the change had been to authorize a road from Alton to Vandalia, or Shelbyville, it would have been a different enterprise. But it will be seen by a reference to the map that a change to a

road from Alton to Shelbyville would have been very similar to the one made here. The road as changed here runs in a line entirely southwest of the original route, and to a point only about half as far as Beloit. Within the reasoning of all the cases, we think this is a change from one enterprise to another, and not one which leaves the original enterprise substantially remaining.

The supreme court of Indiana has recently held that the mere consolidation with another company under an act of the legislature releases non-assenting subscribers. *McCray vs. R. R. Co.*, 9 Ind., 358; *Booe vs. R. R. Co.*, 10 id., 93. I should not wish to adopt that conclusion without further examination. For although it may be within the principle of *R. R. Company vs. Croswell*, 5 Hill, 383, and other cases of a similar character, still there seems to me to be a fair distinction between such changes as only add something to the original enterprise, which becomes tributary to it, and makes its operation more perfect and successful, and changes which abandon the original undertaking for a new one. There is certainly some ground for saying that changes of the former character may be deemed to be fairly within the scope of the original object, as it may reasonably be assumed that every association which undertakes the accomplishment of a particular enterprise, intends to make such changes as experience may show to be necessary for its most successful prosecution. And if this may be assumed, then, although such changes were of course not originally provided for, yet they may fairly be regarded as so far incidental to the original purpose as to be within the scope of the authority which each member has conferred upon the corporation, to bind him by its action whenever the necessary legislative assent is obtained. And if this can be regarded as a correct rule, I should not be prepared to say that a consolidation with another company whose road ran from either terminus in the same general direction, or the connection of a line of steamboats with the road, when one of the termini was on

navigable water, if authorized by the legislature and assented to by the corporation as a body, ought to release a stockholder who did not assent. These things are totally different in their nature from a change which abandons the original enterprise entirely. These cases go, therefore, much further than it is necessary to go here. The following cases also sustain the conclusion that such a change as was made here releases subscribers not assenting: *Plank Road Company vs. Arndt*, 31 Penn. St., 317 ; *Hester vs. Memphis & Charleston R. R. Co.*, 32 Miss., 378. The following cases, as stated in the digest, sustain the same rule, though the volumes have not yet arrived in our library : *Champion vs. Memphis R. R. Co.*, 35 Miss., 692 ; vol. 20 U. S. An. Dig., p. 219, sec. 222 ; *Witter vs. Miss. &c., R. R. Co.*, 20 Ark., 463 ; vol. 20, U. S. An. Dig., p. 219, sec. 235. See, also, *Fry's Ex'rs vs. R. R. Co.*, 2 Met. (Ky.), 314.

The question then remains, whether the power reserved in the constitution to amend, alter or repeal charters should prevent that effect. Some of the cases seem to place great stress upon the existence of this power, and to intimate that under it the non-assenting stock subscriber may be bound by a change, the effect of which would otherwise be to release him. I am wholly unable to see that it should have any such effect. The occasion of reserving such a power either in the constitution or in charters themselves, is well understood. It grew out of the decisions of the supreme court of the United States, that charters were contracts within the meaning of the constitutional provision that the states should pass no laws impairing the obligation of contracts. This was supposed to deprive the states of that power of control over corporations which was deemed essential to the safety and protection of the public. Hence the practice, which has extensively prevailed since those decisions, of reserving the power of amending or repealing charters. But this power was never reserved upon any idea that the legislature could alter a contract between a corporation and its stock

subscribers, nor for the purpose of enabling it to make such alteration. It was solely to avoid the effect of the decision that the charter itself was a contract between the state and the corporation, so as to enable the state to impose such salutary restraint upon these bodies as experience might prove to be necessary. But I suppose it would hardly be claimed that the state, even where this power of amendment is reserved, could, by amending the charter of a railroad company so as to provide for a new and entirely different road, impose any obligation on the corporation to build it. It might possibly repeal the old charter, but whether the company would undertake the enterprise provided for in the amendment, would still depend entirely upon its own consent; as it is well settled that a grant of corporate franchises cannot be imposed upon any persons against their consent, any more than any other grant. Undoubtedly the legislature might, under this power, impose new duties and new restraints upon corporations in the prosecution of the enterprises already undertaken. And provisions of this nature would be binding, whether assented to or not. But when it comes to a question of embarking in a new enterprise, the legislature cannot impose this as a duty upon any corporation. All it can do is to grant it the power, and then it is for the corporation to accept it or not, as it pleases. So that, in all cases where charters are changed, the right to bind stock subscribers who do not assent seems to me to derive no additional support from the fact that the power of amending the charter had been reserved, but to depend essentially upon the question whether the change is of such a character that it may be deemed so far in furtherance of the original undertaking, and incidental to it, as to be fairly within the power of the corporation to bind its individual members by its corporate assent, or whether it is such a departure from the original purpose that no member should be deemed to have authorized the corporation to assent to it for him. If I am correct in supposing that an amendment authorizing an entirely different

road would not be binding on the corporation without its own assent, it must follow that the question whether any particular subscriber is bound must depend upon the question whether he has himself assented, or whether the rest could bind him by their assent, and not on the question whether the legislature had power to pass the amendment.

The result of my views upon this point is, that an amendment of this kind, merely authorizing the substitution of a new enterprise for the old, has precisely the same effect that it would have had if there had been no power reserved to amend the charter. The legislature does not profess to make it obligatory. They grant it as a power to be accepted if the company chooses to accept it; otherwise not. This is just what they might have done if the power of amendment had not been reserved. And it seems to me that the question whether an individual subscriber was bound or not by the corporate assent, should be determined by the same principles in either case. The power of amendment was never reserved with reference to any question between the corporation and its stock subscribers, but solely with reference to questions between the corporation and the state, when the latter desired to make compulsory amendments against the wish of the former.

The effect of this reserved power is discussed in the matter of *Oliver Lee & Co.'s Bank*, 21 N. Y., 20, 21, by Judge DENIO. The amendment there made did not attempt to change the corporate enterprise, but belonged to the class I have referred to, of amendments designed for the better protection of the public. It was a case where new liabilities were imposed on the stockholders, arising from the continued exercise of the corporate powers originally conferred. There being, therefore, no question in the case of a radical change of the original enterprise, I cannot think the judge intended that his remarks should be applicable to such a case. I cannot think that he intended to say that any person who subscribes for the stock of a corporation chartered for a special enterprise, where the power to al-

JANUARY TERM, 1863.           19

Kenosha, Rockford & Rock Island R. R. Co. vs. Marsh.

ter or amend the charter is reserved by the legislature, has thereby agreed that the legislature and the majority of his associates may, without his consent, transfer his investment to a totally different project. Indeed that this could not be done is fairly implied from a subsequent opinion of Judge DENIO, in *The Plank Road Company vs. Griffin*, 24 N. Y., 156. There the company was originally chartered to build a plank road. Afterwards a law was passed extending the time in which they were allowed to finish it by laying down plank, and allowing them, in the mean time, to erect toll gates and exercise the rights of turnpike companies. The judge says: "It is certainly possible that this act was obtained simply as a cover for abandoning the plan of a plank road, and to enable the directors to establish a turnpike. This, however, is not the presumption of the law. On the face of the enactment it simply conferred on the corporation an indulgence which it would not otherwise possess, of postponing the completion of the road for a considerable time, and of so managing it that it should be a source of profit in the meantime. I think this was within the scope of the reservation contained in the general act which declares that the legislature may at any time alter, amend or repeal it, and may amend and repeal any corporation which may be formed under it."

This plainly implies that if the act had abandoned the original project, the subscriber would not have been bound. For the judge had no occasion to make the argument he did to show that the change was within the scope of the power of amendment, if that power was unlimited.

PIERCE, in his work on railroads, p. 98, gives it as the result of the authorities, that even when the power of amending is reserved, it is not unlimited, but "that such a radical change in the company as diverts it from its original purpose" is not binding on a dissenting shareholder. But if the power is not unlimited, where is the limit? By what principles is it to be established? I know of none except those I have already

contended for, which base the right upon the implied author-ity conferred by each one who becomes a member of a corporation, on the majority, to bind him by such changes as may fairly be regarded as incidental to the original project.

The judgment must be affirmed.