HAIGHT and BRADLEY, JJ., concurred : DWIGHT, J., not voting.

Judgment and order affirmed.

In the Matter of the Application of the ROCHESTER, HOR-NELLSVILLE AND LACKAWANNA RAILROAD COM-PANY, RESPONDENT, TO ACQUIRE TITLE TO CERTAIN REAL ESTATE OF CHARLES H. HARTSHORN AND OTHERS, APPELLANTS.

*Proceedings to condemn lands for railroad purposes — when the appraisal will be reversed on account of the admission of incompetent evidence by the commissioners.*

Upon an appeal by a landowner from the appraisal and report of commissioners, appointed to ascertain and determine the compensation which should be paid to the owners for the real estate involved in proceedings for its condem- nation under the right of eminent domain, it appeared that the real estate in question was owned by Charles H. Hartshorn, the son of Charles Harts- horn, deceased, who died intestate, and the owner of the premises in ques- tion, before the commencement of this proceeding. Upon the hearing before the commissioners, certain written instruments executed by the deceased and other citizens of Hornellsville, before the petitioner was organized as a corpora- tion, were, against the objection of the appellants, received by the commissioners. One instrument purported to be a written proposition signed by the decedent and other citizens of Hornellsville, to the effect that they would, within thirty days after the completion of the road, pay to the company to be organized $50,000 and procure the right of way for the company, subject to certain condi- tions. This proposition having been accepted in writing by one of the promoters of the scheme, on behalf of himself and associates, the deceased signed another instrument, by which he agreed to subscribe for 5,000 shares of the capital stock, payable upon the performance of certain conditions inserted in the same instru- ment, and received another instrument, signed by two of the promoters, as president and secretary of the company to be organized, agreeing on the part of the company, in consideration of such subscription, that the deceased should

be allowed at the rate of $200 per acre for the right of way on the lands taken from him for the purpose of the railway. Upon the hearing, the witnesses called by the owner testified that the lands taken were worth more, and those called by the railroad company stated that they were worth less than $200 an acre.

*Held*, that, as no corporation had been created when these instruments were executed, and they had never been recognized by the company after it was organized, they were null and void as to the owner of the land.

That they were also void for the additional reason that the subscription was not absolute, but was conditional and not in conformity with the provisions of the general railroad act.

That, as these instruments, put in the form of contracts, were not such in law nor binding upon any of the persons or parties named therein, they were incompetent as evidence for any purpose.

APPEAL by the landowners from the appraisal and report of commissioners appointed to ascertain and determine the compensation which should be paid to the owners for the real estate involved in the proceedings; and, also, from an order of the Monroe County Special Term of March 26, 1888, entered in Steuben county, denying the landowner's motion to set aside the report of the commissioners.

*Daniel L. Benton*, for the landowners, appellants.

*Frank S. Smith* and *M. Rumsey Miller*, for the respondent.

BARKER, P. J. :

The important question presented on this appeal, arises on an exception taken by the landowners to an item of evidence received on the hearing relative to damages. The owner of the fee of the lands is Charles H. Hartshorn, who is the son of the late Charles Hartshorn, who died intestate, and the owner of the premises in question, before the commencement of these proceedings. The quantity of land described in the petition is fifteen and one-quarter acres, and the award of damages, the sum of $3,190. The evidence covered by the exception is an instrument in writing, of which the following is a copy :

"Now, therefore, in consideration of such subscription, it is agreed on the part of the said company that the said Hartshorn shall be allowed at the rate of $200 per acre for the right of way on the lands so taken from him for the purposes of said railroad, which shall be of the width of sixty-six feet, and taken along

the line of the N. Y., L. E. & Western Railroad, if such Rochester, Hornellsville & Lackawanna Railroad Company shall be located on what is known as the eastern route and distant from said Erie road, then said Hartshorn shall be relieved from said subscription, with the understanding that he shall make such new subscription as in his judgment shall be right and proper, and not less than $2,000, or twenty shares of said stock.

"Dated *May* 26, 1886.

(Signed.)         "JOHN McDOUGAL,
                              "*President.*
                "J. W. NEAR,
                      "*Secretary.*"

This paper was executed by the deceased Charles Hartshorn, and before the petitioner was organized as a corporation under the general railroad act, but the promoters of the scheme to construct and operate a railroad between the places mentioned in the articles of association had negotiations with the said deceased and others, residents of the city of Hornellsville, with a view of securing their co-operation and pecuniary assistance in carrying out the enterprise, which resulted in a written proposition being made and signed by the deceased and others, citizens of the city of Hornellsville, to the effect that they would, within thirty days after the completion of the proposed railroad, pay to the company so to be organized the sum of $50,000 in money, and procure the right of way for the entire length of the road without charge to the company, with this qualification of their offer: If the right of way should cost to exceed $10,000, then the said excess, to the amount of $15,000, should be deducted from the said sum of $50,000, which was to be paid in money. The other terms and conditions embraced in the proposition it is unnecessary to mention in considering this exception. This offer or proposition was accepted in writing by one of the promoters of the scheme in behalf of himself and his associates. Thereupon the deceased signed another instrument in writing agreeing to subscribe for $5,000 of the capital stock of the proposed company, payable upon the performance of certain conditions inserted in the same instrument. It was, at that time, contemplated by the promoters of the scheme that John McDougal and J. W. Near, who signed the said paper, so received in evidence, would, when the

company was organized, be chosen president and secretary of the same, and they were afterwards, in fact, elected to those positions, respectively. After the organization was completed, the road was located on the line known and mentioned in the said papers, as along the line of the New York, Lake Erie and Western Railroad Company, and on and over the lands of the said Charles Hartshorn.

On the hearing before the commissioners, the owners examined the witnesses as to the value of the lands taken, which, in the opinion of such witnesses, was largely above the sum of $200 per acre. The petitioner made no offer on the hearing that the damages might be assessed at $200 an acre, but gave evidence of the same character as that introduced by the owners, the witnesses placing the value of the lands taken to be less than $100 per acre. The several instruments were executed about the same time, and under such circumstances that they constituted but one instrument, and were so considered by the commissioners at the time they were received in evidence.

The precise question presented by the exception is whether these papers were competent evidence on the subject of the damages, for that was the only question the commissioners were authorized by the order of their appointment to consider and determine. In offering the instrument in writing the counsel for the petitioner insisted that it was a valid offer on the part of the then owner, Charles Hartshorn, to sell the land for the sum of $200 per acre, and was binding upon the present owner, his son and only heir-at-law. As we read the record, the commissioners received the papers in evidence as competent proof on the question of damages, and that the same constituted a valid contract on the part of the deceased to sell and convey the right of way at the price named therein, and, so far as it related to the property in question, was binding upon the present owners. The rulings of the commissioners, as set forth in the record, do not sustain the position which the counsel for the petitioner now takes, that these instruments were received in evidence formally, and whether they were valid evidence for any purpose was to be afterwards passed upon, and were not, in fact, considered by the commissioners as evidence in the case. As no corporation had been created when these instruments were executed they were null and void as to Charles Hartshorn. It takes two parties to make a contract. There

must be a promisor and a promisee. After the company was organized there was never any recognition by it, in any form or manner whatever, of the validity or even of the existence of these instruments; nor did Mr. Hartshorn, the subscriber for the capital stock, ever pay any part of his subscription or recognize his obligation to pay the same. The situation is precisely the same as it was on the day these papers were executed and delivered. The petitioner by instituting these proceedings repudiates the proposition now made, that these instruments constituted a valid and binding agreement, on the part of the landowner, to convey the premises for the price mentioned therein, for it is averred in the petition that the company has not been able to acquire title to the lands for the reason that it has been unable to agree with the owner of the same as to the amount of compensation to be paid therefor, and that the owners demand a sum largely in excess of their value. All the authorities bearing upon this subject hold that the preliminary negotiations for subscription to the capital stock of a railroad corporation, before the same is organized, are void and not binding upon the subscriber, nor the company after its organization. (*Buffalo and J. R. Co.* v. *Gifford*, 87 N. Y., 294; *Buffalo and J. R. Co.* v. *Clark*, 22 Hun, 359; *Troy and B. R. Co.* v. *Tibbits*, 18 Barb., 297.)

The subscription is not absolute, but was conditional and not in conformity with the provisions of the general railroad act, and for that reason, independent of the one already mentioned, was invalid. The subscription was not obligatory upon the subscribers, and the same was not payable until the railroad was completed and put in operation, and this provision was hostile to the provisions of the fourth provision of the section of the general railroad act, and rendered the same nugatory and void. (*Troy and B. R. Co.* v. *Tibbits*, 18 Barb. 297; *Poughkeepsie and S. P. P. R. Co.* v. *Griffin*, 24 N. Y., 150; *Butternuts and O. T. Co.* v. *North*, 1 Hill, 518.)

The condition imposed by the subscribers and sanctioned by the promoters of the scheme gave this class of subscribers an advantage over those who may have made subscriptions to the capital stock in compliance with the provisions of the general railroad act, for such subscribers were required to pay upon the call of the board of directors. The subscription papers contained another condition that

upon paying up the stock the subscribers might, at their election, exchange the same for an equal amount of the first mortgage bonds of the company, thus making their subscription, in effect, a loan of money to the company secured by a mortgage upon its property. and the subscribers escaping loss in case the stock should prove valueless and the securities available. As these instruments put in the form of contracts were not such in law, nor binding upon any of the persons or parties named therein, they were incompetent as evidence for any purpose and the exception was well taken. For this reason, we think, the award and the report should be set aside and another hearing directed. In proceedings of this character the strict rules of evidence, applicable to the trial of issues of fact, in actions, does not in all respects apply as to the effect of receiving incompetent evidence. There is good reason for supposing the commissioners were influenced, in affixing the amount of damages, by this evidence; the receipt of it was strenuously resisted by the landowners, and the reason why the evidence was incompetent stated and discussed before the commissioners, before they made their ruling that the evidence was competent. After these instruments were received in evidence, they were referred to by the commissioners as contracts bearing on the question of damages, and binding on the present owner as the successor in interest to one of the parties executing the agreement. The amount of the award very nearly corresponds with the sum mentioned in the preliminary papers as the price which the landowner should receive, and is a circumstance indicating that the commissioners may have acted on the supposition that they constituted a valid contract binding on the owner and his heirs-at-law. We cannot say that injustice has not been done to the owners, by the receipt of this incompetent evidence, and are of the opinion that they are entitled to a rehearing. We do not deem it necessary to consider the other exceptions taken upon the receipt of evidence or to the exclusions of offers of evidence, for it is not likely that those questions will again arise in the same form.

The appraisal and report of the commissioners are set aside and a new hearing awarded before new commissioners, with the costs of this appeal to be paid by the petitioner, and the order of the Monroe county Special Term is reversed, without costs to either party.

HAIGHT, BRADLEY and DWIGHT, JJ., concurred

Appraisal and report set aside and a new appraisal ordered before new commissioners, with costs of this appeal; orders reversed without costs.