# Pratt v. South Pueblo Building and Loan Association.

*District Court of Pueblo County.*

Arrington & McAliney for plaintiff; S. D. Trimble, Esq., for defendant.

Dixon, J.

In 1899 (L. 99, ch. 89, p. 163) an act of the legislature was passed entitled: "An act to enable corporations to extend the term of their incorporation." In the act it is provided that "When the term of years for which any corporation organized under the laws of this state has expired, or is about to expire by lawful limitation, and such corporation has not been administered upon as an expired corporation, or gone into liquidation, or had any settlement of its affairs, it may have its term of incorporation extended and continued the same as if originally incorporated as hereinafter provided." Sec. 2 provides that for this purpose, "A special meeting of the stockholders of said corporation may be called by stockholders owning at least ten per cent. of the capital stock of said company," after notice given as prescribed. "At such meeting the question of renewal shall be submitted to the votes of the stockholders of said company, provided a majority of the stock of the corporation be represented * * * * * and if a majority of the entire outstanding capital stock of the company shall be in favor of a renewal of the corporation" then upon the filing of certificates as required "the corporate life of said company shall be renewed for another term of not exceeding twenty years."

The defendant is a corporation which was formed in the year 1881, and in 1901, its corporate existence being about to terminate, it undertook to comply with the provisions of the act of 1899, and extend its corporate existence for another period of twenty years.

At the meeting which was held under the statute, the plaintiff, a stockholder in the corporation, dissented from the proposed renewal of the corporate

existence, and entered a protest against the same. This protest was ignored, and each and every step necessary under the statute was taken in order that the corporate existence might be renewed. The plaintiff brings this action for relief.

The question presented is, whether or not the existence of a corporation which was formed prior to the year 1899 can be extended under the provisions of that act by the vote of stockholders representing a majority of the stock, over the protest of dissenting stockholders, so that the latter will be bound thereby?

In the celebrated Dartmouth College case, 4 Wheat. 518, it was held by the Supreme Court of the United States, and has ever since been held, that the charter of a corporation is a contract within the meaning of that provision of the constitution of the United States (U. S. Const., Art. 1, § 10, clause 1) which declares that no state shall pass any law impairing the obligation of contracts. Since that decision, acting upon the suggestion of Mr. Justice Story, it has been the custom of the states, whenever a corporation was created, either by special charter or under general statutes, to make certain reservations of power to the state; and there can be no doubt that the reservations expressed in a general statute are just as effective as though incorporated specifically in a charter.

In this state the reservation of power made by the legislature is found in 1 Mills Ann. St., § 684, and reads as follows: "The general assembly may at any time alter, amend or repeal this act. and shall at all times have power to prescribe such regulations and provisions as it may deem advisable, which regulations and provisions shall be binding on any and all corporations formed under the provisions of this

act."

The determination of the demurrer in this case depends upon the proper construction of this section.

I presume it was never doubted that the charter of a corporation is a contract between the members of the corporation, *inter se*. The decision in the Dartmouth college case was not necessary to settle that point. The great question there debated was the relation of the corporation to the sovereign power, and the principle settled was that the charter of a corporation is a contract as between itself and the state. It is universally conceded that the sole purpose of the reservations made by the states is to meet that decision and counteract its effects. If this be true, it necessarily follows that such reservations were made for the purpose of affecting the relation of a corporation to the state which created it, and for that purpose only, and must be construed accordingly. In other words, such reservations must be construed as though the Constitution of the United States did not contain the provision above referred to; and if this were true, the charter of a corporation would be a contract as between the members of the corporation, protected by the state constitution from any material alteration.

This is the view entertained in the best considered cases. I quote at length from the case of Kenosha, Rockford & Rock Island Railroad Co. vs. Marsh, 17 Wis. 13, because what I conceive to be the true doctrine is most admirably expressed: "The occasion of reserving such a power either in the constitution or in charters themselves is well understood. It grew out of the decisions of the supreme court of the United States, that charters were contracts within the meaning of the constitutional provision that the states should pass no laws impairing

the obligation of contracts. This was supposed to deprive the states of that power of control over corporations which was deemed essential to the safety and protection of the public. Hence the practice, which has extensively prevailed since those decisions, of reserving the power of amending or repealing charters. But this power was never reserved upon any idea that the legislature could alter a contract between a corporation and its stock subscribers, nor for the purpose of enabling it to make such alteration. It was solely to avoid the effect of the decision that the charter itself was a contract between the state and the corporation, so as to enable the state to impose such salutary restraint upon these bodies as experience might prove to be necessary. * * * * The power of amendment was never reserved with reference to any question between the corporation and its stock subscribers, but solely with reference to questions between the corporation and the state, when the latter desired to make compulsory amendments against the wish of the former."

Cook says: "There is a strong tendency in the decisions, and a tendency which is deserving of the highest commendation, to limit the power of the legislature to amend a charter under this reserved power. *It should be restricted to those amendments only in which the state has a public interest.* Any attempt to use this power of amendment for the purpose of authorizing a majority of the stockholders to force upon the minority a material change in the enterprise is contrary to law and the spirit of justice." Cook, Stock and Stockholders, (2nd ed.) § 501.

Morawetz says: "But it was not intended by any reservation in a charter or a general law to withdraw the legislature of a state from its properly legislative duties, and make it the arbiter over private rights.

It is not the purpose of a provision of this nature to give the legislature of a state fatherly control over the affairs of private corporations. The right is reserved for the benefit of the public, and can be exercised only for public purposes." Morawetz, Private Corporations, (2nd ed.) § 1097.

To the same effect see, Beach on Private Corporations, § 40 *et seq.;* Thompson on Corporations, § 5409, *et seq.* and cases cited.

An extended review of the authorities cited is rendered unnecessary in my judgment, because of the constitutional provision under which the reservation was made by the legislature, and in the light of which it must be interpreted. Colo. Const. Art. XV. § 3 reads: "The general assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this constitution, or any that may hereafter be created, *whenever in their opinion it may be injurious to the citizens of the state*, in such manner, however, that no injustice shall be done to the corporators."

Under this section the statute which the legislature is authorized to enact is a statute which shall reserve the right of the state to alter, amend or repeal any charter *only*, "whenever it may be injurious to the citizens of the state."

In my opinion, the powers reserved in the section above quoted were for the purpose of enabling the state to retain control of the existence and operations of a corporation, so as to protect the interests of the public. By virtue of its inherent power of sovereignty, the state may make such immaterial changes as can be fairly and reasonably held to be in promotion and furtherance of the original enterprise. Such changes are not within the restriction of either the federal or state constitution, because they aid,

and do not impair the original contract between the members of the corporation.

I conclude, therefore, that the restriction of the federal constitution being removed by the reservation of power made for the protection of public interests, the state can make any amendments or alterations which it may deem necessary so as to change the relations between the corporation and itself, and may thereby indirectly effect the relations between the members of the corporation; and second, that by virtue of its sovereignty the state may make any immaterial changes and alterations in the contract as between the corporators themselves which may be regarded as in promotion and in furtherance of the original design. Beyond this it cannot go.

It requires no argument to show that if the act of 1899 can be regarded as an amendment or alteration of the charter of the defendant corporation, it is not an exercise of the reserved powers above set forth. Neither the state as a sovereignty, nor the citizens of the state, have any interest whatever in the perpetuation of a corporation of the character of this defendant, nor can the perpetuation of such a corporation be deemed necessary from any point of view, either to promote public interests or to prevent injury to the citizens of the state. Nor can such an amendment be considered as in furtherance of the original design. The original contract between the members of the corporation was that its business should be transacted during the period of twenty years. The time limited for its existence was of the very essence of the contract, and to extend that time from a period of twenty years to a period of forty years is not to promote the original enterprise, but to force upon the stockholders an entirely new and different contract from that which they entered into.

Another consideration presents itself which seems to be equally conclusive. The powers reserved by the legislature are absolute, and not conditional. In order that they may be exercised it is not necessary that the legislature should obtain the consent of the stockholders expressed by a vote, either unanimous or of a majority. The changes which it reserves the power to make are compulsory, that is to say, if the legislature deems it wise to make changes, the corporation must accept the same, or be content to surrender its corporate existence.

Thus in Cross v. Peach Bottom Ry. 97 Pa. St., 392, the court says—"The legislative reservation is in the nature of a police power, designed for the protection of the public welfare, and where such protection becomes necessary the law-making power may act without consulting either the interests or the will of the company, and in such case it may well be that not only the company, but its stockholders, must submit. The reservation was only intended to enable the legislature to act without the consent and against the will of the corporation."

Manifestly, therefore, the power to perpetuate the existence of a corporation beyond the period fixed by the charter for its existence is not one of the powers reserved, because it is perfectly well settled that any corporation may avoid even compulsory changes by surrendering its corporate existence.

Suppose that the act of 1899 had been cast in the form of a compulsory amendment, and that it had been enacted that from and after the date of the passage of the act the corporate existence of each and every corporation in the state should be extended for a period of twenty years from and after the expiration of its corporate existence as fixed by the charter. Could it be contended for an instant that the

state could compel corporations to continue their existence against their will? If not, then it is equally well settled that the state cannot authorize a majority of the stockholders to make any alteration or amendment in its charter which the state could not make against the will and consent of all of the stockholders.

Finally, it is to be observed, that the act of 1899 nowhere expressly declares that the minority stockholders shall be bound by the action of the majority. Construing the act, therefore, in the light of the general principles of law, it must be held that it was the intention of the legislature to enable the majority of the stockholders to perpetuate the life of the corporation, and to continue business if they desired to so do, provided the rights of the minority stockholders were duly protected.

Much was said in the argument of the effect of permitting a dissenting stockholder to stand in the way of the interests and will of the majority. The argument has force, and has been given by the courts its due weight in cases where the alterations proposed were of such a character as to be reasonably held to be in promotion of the original enterprise, and where the dissenting stockholder attempted to take advantage of a technical alteration in order to escape his liability. But the argument has no weight in a case of this character. Here the dissenting stockholder has both the law and the equity on her side, when she says to the majority: "I entered into this enterprise for a definite and fixed period of twenty years. That time has expired. I do not wish to proceed any further. If the rest of you desire to proceed, well and good, I have no objection; but as for myself, I wish to withdraw my money." After

this declaration, to compel her to continue would be in violation of both the letter and the spirit of her contract, and would be contrary to natural justice.

I can find no well-considered case in conflict with the views here expressed. In the case of Smith v. Eastwood Wire Mfg. Co., 43 At. 567, cited by defendant, there were some general expressions which would seem to support the contention of counsel; but the general expressions contained in any opinion are to be construed in connection with the facts of the case. In that case it appears that the statute of the state of New Jersey permitted corporations to be formed for any period not exceeding fifty years; the corporation in question was formed for a period less than the limit, and at the time of its formation there existed a statute which authorized the extension of the term of corporate existence by the vote of a certain proportion of the stockholders. The purchaser of stock took it with an understanding of the condition of the law written in his contract, that a vote of a certain proportion of the stockholders would be sufficient to continue the corporate existence beyond the term fixed in the charter. That case would be directly in point as to any corporation which has been created since the year 1899. There can be no doubt that upon the expiration of the corporate existence of any corporation formed in this state after the year 1899, the corporate existence can be perpetuated by vote of the stockholders representing a majority of the stock outstanding, if that statute be complied with. But in the present case, there was no such law in existence at the time the plaintiff came in possession of her stock, and she bought it with a distinct understanding, and it was a contract between her and her associates in the enterprise that at the expiration of twenty years the corporate business

was to come to a conclusion.

I hold, therefore, that while a majority of the stockholders of a corporation formed prior to the year 1899 may, upon the expiration of its corporate existence, perpetuate its existence under the act of 1899, they cannot thereby bind dissenting stockholders and compel them to continue in the enterprise. If the majority in such a case desire to perpetuate its existence, they must obtain the unanimous consent of the stockholders, or they must be prepared to pay to the dissenting stockholders the value of their stock.

In this case I think that the plaintiff is entitled to have her stock appraised, its true value ascertained, and to an alternative decree requiring the defendant corporation to pay to her the assessed value of the stock, or to suffer liquidation.

The demurrer to the complaint is overruled.