## WEEDE v. EMMA COPPER CO.

No. 3639.   Decided August 20, 1921.   (200 Pac. 517.)

1. CORPORATIONS—PROVISIONS OF CONSTITUTION AND STATUTES ARE
   PART OF THE ARTICLES OF INCORPORATION.  Provisions contained
   in the state Constitution and statutes are as much a part of
   the articles of incorporation as though they were expressly
   copied therein, and are to be construed together; the Constitu-
   tion and statutes controlling in case of conflict with the articles
   of incorporation.[1]

2. CORPORATIONS—AMENDMENT TO PERMIT ASSESSMENT ON STOCK
   AUTHORIZED WITHOUT CONSENT OF ALL STOCKHOLDERS; "PERSONAL
   OR INDIVIDUAL LIABILITY."  Where statute (Comp. Laws 1917,
   § 886) provided that the liability of the holder of full-paid
   capital stock for assessments should not be changed without the
   consent of all the stockholders, and was amended (Session
   Laws 1903, c. 94), to provide that the personal or individual
   liability of the holder of such stock for assessments shall not
   be changed without such consent, the intention was to prohibit
   the collection of assessments against the stockholders personally
   or individually, and was not to prevent amendments of the
   articles of incorporation to provide for a levy of assessment
   against the stock owned by the stockholder, since "personal
   or individual liability" refers to a liability which is personal,
   and which may be enforced by an ordinary action against the
   individual in which a judgment may be obtained and satisfied
   out of any nonexempt property such individual may own.[2]

3. CORPORATIONS—STATUTE CONSTRUED AS APPLYING TO CALLS FOR
   UNPAID SUBSCRIPTIONS.  Comp. Laws 1917, § 919, providing that
   the board of directors may proceed by action to recover an
   assessment against delinquent stock, is limited to the collection
   of calls for unpaid subscriptions and does not authorize a per-
   sonal action to collect assessments against fully paid stock.[3]

Appeal from District Court, Third District, Salt Lake
County; *W. H. Bramel*, Judge.

[1] *Association* v. *Keith-O'Brien Co.*, 45 Utah, 218, 143 Pac. 1015.

[2] *Garey* v. *St. Joe Min. Co.*, 32 Utah, 497, 91 Pac. 369, 12 L. R. A.
(N. S.) 554; *Nelson* v. *Keith-O'Brien Co.*, 32 Utah, 396, 91 Pac. 30;
*Dahl* v. *Salt Lake City*, 45 Utah, 544, 147 Pac. 622; *Dotson* v. *Hoggan*,
44 Utah, 295, 140 Pac. 128.

[3] *Forsyth* v. *Selma Mines Co.*, 58 Utah, —, 197 Pac. 586.

Action by Ruby B. Williams Weede against the Emma Copper Company. From a judgment for plaintiff, defendant appeals.

REVERSED AND REMANDED, with directions.

*Dey, Hoppaugh & Mark,* of Salt Lake City, for appellant.

*Dana T. Smith* and *S. P.. Armstrong,* both of Salt Lake City, for respondent.

FRICK, J.

The plaintiff, in her complaint, in substance, alleged: That the defendant corporation, hereinafter called defendant, on the 20th day of November, 1906, was duly incorporated pursuant to the laws of Utah, with a capitalization of 1,000,000 shares, of the par value of $1 each. That the defendant was incorporated for the purpose of taking over, holding, and operating certain mining claims and mining property located in the state of Utah. That said mining claims and mining property were conveyed to the defendant by the owners thereof, in consideration of 600,000 shares of said capital stock, all of which was duly issued and delivered to the owners of the property aforesaid, who were the incorporators of the defendant. That the remainder of said 1,000,000 shares, to wit, 400,000 shares, were retained in the treasury of the defendant, to be disposed of for the purpose of developing and working said mining property. That the entire amount of said capital stock, including said 400,000 shares, was fully paid up by the conveyance of said mining claims and mining property. That it was provided in the articles of incorporation that the whole of said capital stock was "fully paid and nonassessable." That on or about the 1st day of May, 1911, the plaintiff purchased 1,000 shares of said stock, which was evidenced by a certain stock certificate, numbered 1,070, that theretofore had been duly issued and delivered by said defendant to one W. H. Havenor, and which certificate was

duly indorsed and delivered by said Havenor to the plaintiff. That the plaintiff, by virtue of the indorsement and delivery of said certificate to her, became and continued to be a stockholder of said defendant, and was entitled to have said certificate and shares of stock transferred on the books of said defendant in her name. That on or about the 15th day of February, 1917, the plaintiff notified said defendant that she was the owner of said 1,000 shares of stock, and produced said certificate, and offered to surrender the same to said defendant properly indorsed, and asked that the said stock be transferred on the books of said defendant in the name of the plaintiff, and that a certificate in due form be issued to her. That said defendant refused, and still refuses, to issue to plaintiff a certificate therefor, for the alleged reason that said defendant "pretends and claims that its records evidence the sale of said stock for unpaid and delinquent assessments." That plaintiff has no knowledge respecting "any unpaid or delinquent pretended assessments," nor of any pretended sale, and is "unable to set forth or allege any facts as to such pretended assessment and pretended sale." That plaintiff is informed and states "that, notwithstanding the provisions of said articles of incorporation * * * that the capital stock is nonassessable," "on or about August 16, 1909, at a special meeting of the stockholders of said defendant, * * * an attempt was made to amend said articles of incorporation of said defendant in the following particulars, to wit: By adding to said articles of incorporation an article reading as follows: 'The capital stock of this corporation, when issued, was assessable, and the board of directors are hereby authorized and empowered to levy assessments upon the said stock, in accordance with the laws of the state of Utah.'" That when said special meeting was held the plaintiff was not the owner of any of said stock and was not a stockholder of the defendant, and was not present at said meeting, and had no notice or knowledge thereof, and had no notice or knowledge of said pretended amendment of said articles of incorporation "until on or about the month of May, 1915." That upon information plaintiff alleges that there were represented and

voting at said special stockholders' meeting, 563,975 shares of stock out of the whole number of 745,350 shares, which number was then issued and outstanding. That the whole number of shares, to wit, 563,975, which were represented at said special meeting, voted for said amendment, and no votes were cast against the same. That said amendment, after being voted for and adopted by said stockholders, was, on the 18th day of August, 1909, duly certified and filed as provided by law. The plaintiff also alleged that the amendment aforesaid was unauthorized, and that the pretended assessments levied and the sales of stock made thereunder were void and of no force or effect; that plaintiff at no time assented to the attempted amendment of said articles of incorporation, or to the levying of any assessment or assessments thereunder. She then alleges the value of said shares of stock, and prays judgment that the attempted or pretended assessment and sale of said 1,000 shares of stock be declared void and of no effect; that plaintiff be declared to be the owner of said 1,000 shares of stock, and that the defendant be required to transfer said stock and to issue to her a certificate therefor, or, in lieu thereof, to pay to her the value of said stock, and for general relief.

The complaint is very long and contains many repetitions. We have tried to condense it so far as possible, and we think the foregoing statement contains all of the material facts alleged. We are obliged to state the allegations of the complaint somewhat in detail for the reason that it was assailed by general demurrer on behalf of the defendant, which demurrer was overruled; and, the defendant electing to stand upon its demurrer, the court entered judgment in favor of plaintiff as prayed for, from which the defendant appeals.

The only error assigned is that the court erred in overruling the demurrer and in entering judgment for the plaintiff. The question presented for decision is whether, in view of the provisions of our Constitution and statutes, the articles of incorporation, in which it is provided that the capital stock is full-paid and nonassessable, may be amended by the stockholders owning a majority of the stock, so as to make

the stock assessable (without the consent of all the stockholders), and in case an assessment is not paid forfeit the stock.

In *Garey v. St. Joe Min. Co.*, 32 Utah, 497, 91 Pac. 369. 12 L. R. A. (N. S.) 554, it was held that, under the statute in force when the company which was the defendant in that case was incorporated and organized, for the reasons there stated, the articles of incorporation could not be amended, so as to make nonassessable stock assessable without the unanimous consent of the stockholders; while in the case of *Nelson v. Keith-O'Brien Co.*, 32 Utah, 396, 91 Pac. 30, it was held that, in view that the articles of incorporation in that case provided that the same "may be amended in any respect," the number of stockholders owning the required number of shares of stock could make an amendment to the articles of incorporation, so as to levy assessments against the stock, without getting the unanimous consent of the stockholders. Counsel for both sides conceded that, in view that the defendant in the case at bar was organized under a statute which in some respects differed from the one under which the defendants in the foregoing two cases were incorporated, those cases are not controlling here, and we have referred to them only for the reason that some of the questions here involved are to some extent considered in those cases, although not decided.

In view of the legal questions involved in this case, it becomes necessary to state with some particularity both the constitutional and statutory provisions of this state which relate to corporations like the defendant, and which were in force at the time the defendant was incorporated. Our Constitution (article 12, § 1) provides:

"Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended or repealed by the Legislature, and all corporations doing business in this state may, as to such business, be regulated, limited or restrained by law."

Comp. Laws Utah 1917, § 861, which was in force when the defendant was incorporated, provides what the articles of incorporation must contain, and one of the things that must be stated therein is:

"Whether or not the private property of the stockholders shall be liable for its obligations."

The several sections hereinafter referred to were all in force when the defendant was incorporated. Section 879 reads as follows:

"The property of the corporation and the unpaid stock shall be liable for the debts of the corporation; but the individual property of any holder of full-paid capital stock of any corporation organized since March 8, 1894, or that hereafter may be organized, under the laws of this state, except as otherwise expressly provided in this title, shall not be liable for the corporate obligations, nor shall assessments be levied on such stock for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation."

Section 886, so far as material here, provides:

"The articles of incorporation of any corporation now existing or that hereafter may be organized under the laws of this state may be amended in any respect conformable to the laws of this state by a vote representing at least a majority in amount of the outstanding capital stock thereof at a stockholders' meeting called for that purpose as prescribed in section 887.  *  *  * "

Then follow several provisos not material here. The section concludes with the following proviso:

" *  *  *  And provided, further, that the personal or individual liability of the holder of full-paid capital stock for assessments or for the indebtedness or obligation of the corporation shall not be changed without the consent of all the stockholders."

Section 900 reads as follows:

"The full-paid capital stock of any corporation organized since March 8, 1894, or that may hereafter be organized under the laws of this state, shall not be assessable for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation: Provided, that if such stock is made assessable and the manner of levying the assessment is not provided for, it shall be levied in the manner and form hereinafter prescribed."

The statute further provides how the assessments shall be levied, and the notices that shall be given and in case the assessments are not paid how the stock shall be sold, etc. The foregoing provisions of our Constitution and statutes, all of which were in force when the defendant was incorporated, must therefore be considered in connection with the

articles of incorporation in determining the powers of the defendant and the rights of its stockholders.

The provisions contained in the Constitution and statutes are as much a part of the articles of incorporation as though they were expressly copied therein. The law in that regard is tersely and correctly stated in 1 Fletcher, Cyc. Corp. in section 226, in the following words:

" * * * The provisions of the statute or general incorporation act enter into and form a part of the charter, and the incorporation papers and statute are to be construed together; the latter controlling in case of conflict. It is not necessary that the general law should be copied in the charter, but it forms an essential part of it, and all parties are bound by its terms, whether copied in the charter or found only on the statute book. Moreover, constitutional provisions automatically become a part of the charter."

In *Association* v. *Keith-O'Brien Co.*, 45 Utah, 218, 143 Pac. 1015, the holding of this court is to the same effect. Under the statute, therefore, any provision which is made a part of the articles of incorporation may be amended or changed, unless the proposed amendment or change is prohibited by the statute. Moreover, such amendment or change may be made by such number of votes as the statute may prescribe. If the statute requires a majority vote only, that number is sufficient, or if it requires the consent of more than that number, or all, of the stockholders, the amendment or change cannot be made until the requisite number consent thereto as provided in the statute. The right to make such an amendment or change, however, exists, whether the right is merely given in the statute, or whether it is expressly written into the articles of incorporation. In *Nelson* v. *Keith-O'Brien Co.*, supra, it was held that the articles of incorporation might be amended so as to make the stock assessable, because the right to amend the same "in any respect" was reserved in the articles themselves. As we have seen, however, that right in this case existed by virtue of the statute, precisely the same as though it had been reserved in the articles.

In view, therefore, that a majority of the stockholders of the defendant clearly had the right to amend the articles of incorporation to make the stock assessable, the question is

not whether they had the right to adopt such an amendment; but the question is whether, in view of the proviso in section 886, supra, the amendment in this case was legally adopted— that is, could the amendment in question be adopted by a majority of the stock represented at the meeting, or did it require the consent of all the stockholders? To determine that question requires us to consider the proviso found in section 886, which we have hereinbefore set forth. The proviso reads:

"That the personal or individual liability of the holder of full-paid capital stock for assessments  *  *  *  shall not be changed without the consent of all the stockholders."

When the defendant company in the Garey Case was incorporated, and for many years prior thereto, the proviso we have just quoted read as follows:

"That the liability of the holder of full-paid capital stock for assessments  *  *  *  shall not be changed without the consent of all the stockholders."

The qualifying words, "personal or individual," were inserted into the statute in 1903. Sess. Laws Utah 1903, c. 94, p. 80. It will thus be seen that the phraseology of the proviso underwent a material change after the defendant in the Garey Case was incorporated. As the statute read prior to 1903, no levy for assessments on full paid stock could be made without the consent of all the stockholders. After the amendment of 1903, however, the liability was restricted to "personal or individual" liability. In changing the phraseology of the statute, it must be assumed that it was the intention of the Legislature to change its effect. 2 Lewis, Suth. St. Const. (2d Ed.) § 399; *Dahl* v. *Salt Lake City*, 45 Utah, 544, 147 Pac. 622. If it was intended to continue in effect the proviso that no levy for assessments could be made unless consented to by all the stockholders, why make the change in the phraseology of the statute, by inserting therein the qualifying words "personal or individual" preceding the word "liability"?

In making that change the Legislature manifestly intended to change the proviso, so that the liability should thereafter

apply only to the personal or individual liability, instead, as heretofore, to every possible liability. Where personal or individual liability is referred to in connection with the capital stock of corporations and their stockholders, it is generally—indeed, we think universally—understood that personal or individual liability refers to a liability which is personal, and which may be enforced by an ordinary action against the individual, in which a judgment may be obtained and satisfied out of any nonexempt property such individual may own. In 3 Bouvier's Law Dictionary, Rawle's Third Revision, p. 2576, in defining personal liability of a stockholder, it is said:

*"Personal Liability.*—The statutory liability of stockholders of corporations by which they are held individually liable for the debts of the corporation."

To the same effect is Anderson's Law Dictionary, p. 616. In Black's Law Dictionary, p. 893, the author defines personal liability thus:

"The liability of stockholders in corporations, under certain statutes, by which they may be held individually responsible for the debts of the corporation, either to the extent of the par value of their respective holdings of stock, or to twice that amount, or without limit, or otherwise, as the particular statute directs."

Such is the meaning which is given to the term "personal or individual liability" by our own Constitution and statutes, and to that effect are the decisions. In view that the Legislature deliberately changed the phraseology of the statute, by inserting therein the qualifying words referred to, and in view that the meaning of those words is always understood and applied as relating to the personal liability of the stockholders, as contradistinguished from a mere stock liability, we can see no escape from the conclusion that, under the proviso as it read when the articles of incorporation in question in this case were amended, it did not require the unanimous consent of the stockholders to authorize the adoption of the amendment, and that the same was legally adopted.

Neither side has cited or referred to any case in which the question here involved was directly decided, and, after an extended research, we have not been able to find any. There

is one case, however, which in some respects is similar to the
case at bar. We refer to the case of *Somerville* v. *St. Louis,
M. & W. Co.,* 46 Mont. 268, 127 Pac. 464, L. R. A. 1915B, 811,
where it was held that a statute permitting amendments to
the articles of incorporation must be construed a part of such
articles, and that an amendment to make nonassessable stock
assessable was properly adopted without the unanimous con-
sent of the stockholders.

In this connection it is also important to keep in mind that
this court, in the case of *Dotson* v. *Hoggan,* 44 Utah, 295, 140
Pac. 128, is committed to the doctrine that there is a distinc-
tion between the personal liability of the stockholder and the
liability to which his stock may be subjected by levying an
assessment and the forfeiture thereof in case he refuses or
fails to pay the assessment. That distinction is also recog-
nized in the case of *Wall* v. *Basin Min. Co.,* 16 Idaho, 313,
101 Pac. 733, 22 L. R. A. (N. S.) 1013. To the same effect is
*Schricker* v. *Ridings,* 65 Mo. 208. In *Wall* v. *Basin Min. Co.,*
supra, it is held that a proceeding under a statute like ours
to collect an assessment by the sale and forfeiture of stock is
a proceeding in rem merely. In the course of the opinion
(16 Idaho, 328, 101 Pac. 738, 22 L. R. A. [N. S.] 1013) the
court said:

"The levy of an assessment, under the statute of this state,
against stock fully paid up is a proceeding in rem by which the
stock may be sold; but no personal liability attaches to the stock-
holder for any deficiency arising from the sale."

That is precisely what is held by this court in *Dotson* v.
*Hoggan,* supra. Moreover, it is there held that no personal
action can be maintained against the stockholder to collect an
assessment levied upon fully paid stock.

Counsel for plaintiff, however, insist that by virtue of sec-
tion 919 a personal action may be maintained against the
stockholder for the collection of such assessment. That sec-
tion reads as follows:

"On the day specified for declaring the stock delinquent, or at
any time subsequent thereto and before the sale of delinquent stock,
the board of directors may elect to waive further proceedings under
this chapter for the collection of delinquent assessments, or any part

or portion thereof, and may elect to proceed by action to recover the amount of the assessment and the costs and expenses already incurred, or any part thereof."

In making the foregoing contention, counsel have manifestly overlooked the fact that, as pointed out by this court in the case of *Forsyth* v. *Selma Mines Co.*, 58 Utah —, 197 Pac. 586, our statute provides for two kinds of assessments, one for what are usually denominated calls for unpaid subscriptions and the other on fully paid stock. When all of the provisions of our statute are properly considered and construed, it becomes quite clear that the action referred to in section 919, supra, is limited to the collection of calls        3 for unpaid subscriptions, and has no application to the collection of assessments on fully paid stock. The latter assessments are governed by the law as laid down in *Dotson* v. *Hoggan*, supra.

Nor are the cases cited by counsel from the Supreme Court of California, namely, *San Bernardino, etc., Co.* v. *Merrill*, 108 Cal. 490, 41 Pac. 487, *National Parafine Oil Co.* v. *Chappellet*, 4 Cal. App. 505, 88 Pac. 506, and *Marshall* v. *Wentz*, 28 Cal. App. 540, 153 Pac. 244, in point here. Those cases are all based on the California statute, under which each stockholder is personally liable for the debts of the corporation to the extent stated in the statute. Each stockholder may thus be sued at any time, and a personal judgment obtained against him, which may be collected precisely the same as any other personal judgment may be. Such is not the law of this state, and this court, the same as the Supreme Court of Idaho, as pointed out, is committed to the contrary doctrine. Nor has the case of *Ireland* v. *Palestine, etc., Co.*, 19 Ohio St. 369, any application here.

In view of the provisions of our Constitution and statutes, all of which must be considered and applied in connection with the provisions of the articles of incorporation, we think it is clear that it was the intention of the Legislature to authorize a majority of the issued and outstanding stock of any corporation to change the articles of incorporation, so as to make unassessable stock assessable, provided no attempt is made, in making such amendment, to change the personal or

individual liability of the stockholder. In arriving at such a conclusion we are not unmindful of the plaintiff's contention that fully paid stock is the property of the stockholder, and that by forfeiting the same his property rights are affected. The contention, to our minds is, however, not applicable here. If, for example, the corporation is indebted and no assessments may be levied to raise funds to pay such indebtedness, judgment may be obtained against it, and all of its assets sold to pay the same. It might just as logically be contended, therefore, that that may not be done, because it deprives the stockholder of his interest in the corporation and thus affects his private property rights. His stock merely represents whatever interest he may have in the property or assets of the corporation. If the corporation has no property or assets, or is insolvent, his stock is necessarily worthless. If, therefore, an assessment is levied upon his stock to pay debts, and he and the other stockholders fail to pay the same, and the property of the corporation is sold to satisfy the indebtedness, each stockholder is precisely in the same situation, and no worse, than if his stock is forfeited for nonpayment of the assessment.

Moreover, we do not think it was the intention of the Legislature to permit one stockholder, owning a few shares of stock in a corporation, to prevent all the other stockholders from raising funds to pay debts of the corporation or to develop its property. No doubt it was the intention to protect the stockholder against personal liability, but not to enable him to play the "dog in the manger." When it is kept in mind that in this state there are many mining corporations, the only assets of which are undeveloped mining claims, one can readily understand why the Legislature framed the statute so as to permit the majority of the stock to control in the raising of funds for the payment of corporate debts and for the development of the mining property. If that could not be done, a single stockholder could compel the sale and sacrifice of what might be developed in the future to be a very valuable property, merely because he would not consent to the levying of an assessment. Again, he might either arrest or

entirely prevent the development of the mining resources of this state. The Legislature, therefore, could well take the position that a stockholder is sufficiently protected if he is made immune against personal liability, while, upon the other hand, the majority's interests are also recognized by giving them the right to raise the necessary funds by assessing the stock to pay its debts and to develop the mining resources of this state. Such, to our minds, is the manifest intent and purpose of our statute.

From what has been said, therefore, it follows that the district court erred in overruling defendant's demurrer. The judgment is therefore reversed, and the cause is remanded to the district court of Salt Lake county, with directions to sustain the demurrer, and, in case the plaintiff elects not to amend her complaint, to dismiss the action. Costs to appellant.

CORFMAN, C. J., and WEBER, GIDEON and THURMAN, JJ., concur.