WOODBINE SAVINGS BANK, Appellee, v. AMOS SHRIVER, Appellant.

No. 39479.

JUNE 24, 1929.

OPINION ON REHEARING APRIL 10, 1931.

Wallace & Claypool, for appellant.

Bolter & Murray and Hatter & Harned, for appellee.

KINDIG, J.—On May 6, 1891, the plaintiff-appellee was incorporated as a savings bank under the laws of Iowa. Thereafter, at the expiration of the charter thus granted, the appellee was re-incorporated May 11, 1911. The capital stock of the appellee bank was increased in February, 1920, from $30,000 to $50,000. At that time the defendant-appellant owned 26 shares of this stock.

Appellant's stock was obtained upon three different occasions as follows: 10 shares on May 18, 1891; 10 shares on April 16, 1906; and 6 1/6 shares on February 14, 1917. For some reason there was later a reissuance of the certificate for the 6 1/6 shares, and the amount reduced to 6 shares. Later the appellee bank's capital stock became impaired to the extent of 100 per cent, and, on February 15, 1927, the state banking superintendent ordered an assessment to restore the stock's value. Consequently the proper proceedings were taken and the assessment duly made. Then, according to law, appellant's stock was sold November 17, 1927, for the sum of one dollar per share, or a total of $26.00. This action was brought for the purpose of recovering from the appellant the deficiency, due under the assessment against him, after applying the said $26.00. In other words, the amount demanded from the appellant by the appellee is $2,574. After a hearing the District Court found against the appellant and gave appellee judgment for the amount claimed.

There is no question raised concerning the non-liability of appellant for the assessment to restore the value of the bank's stock. But it is claimed by appellant that his liability ceased when his stock was sold; that is to say, appellant contends that he, under the state and federal constitutions, cannot be made liable personally for the deficiency above-named. The basis for

appellant's argument in this regard is that under the Iowa statutes, in existence when the stock was purchased, there was no personal liability for the assessment; while now, under the amended statutes there is a personal liability. It is the personal liability that appellee seeks to enforce here. Therefore, appellant maintains that his contract will be impaired if the personal liability is enforced against him. An impairment of contract is not permitted under the state and federal constitutions, and the primary question for determination here is whether or not the personal liability sought to be enforced is an impairment of appellant's contract under the constitutional provisions.

Apparently this legislation first appeared in Chapter 29, Acts of the Twenty-Fifth General Assembly, which became effective May 5 or 6, 1894. Such legislation was later codified and became Sections 1878, 1879, and 1880 of the 1897 Code. These sections of the 1897 Code are now substantially embodied in Sections 9246 to and including 9250 of the 1927 Code. For convenience, the foregoing provisions of the 1927 Code are here set forth:

"9246. Should the capital stock of any state or savings bank become impaired by losses or otherwise, the superintendent of banking may require an assessment upon the stockholders, and shall address an order to the several members of the board of directors of such bank, fixing the amount of assessment required."

"9247. The board of directors shall, within thirty days after the receipt of such order, cause such deficiency to be made good by a ratable assessment upon the stockholders for the amount of stock held by them, by giving such stockholders notice in writing, signed by the president or vice president, attested by the cashier or secretary of the bank, under its seal, if it have one, and deposited in the post office, addressed to the last known residence of the stockholders, proof thereof to be made by the affidavit of the person so making the deposit, which notice shall state the entire sum to be raised, and the amount due from the addressed stockholder."

"9248. Should any stockholder neglect or refuse to pay his assessment within ninety days from the date of mailing notice thereof, the board of directors shall cause a sufficient amount of the capital stock held by such stockholder to be sold

at public auction to make good the deficiency, after giving ten days' notice thereof by personal service or by posting the same in the bank, and publishing it in some newspaper of the county in which the bank is located, which notice shall recite the assessment made, the amount due thereunder from the stockholder, and the time and place of sale; proof of all which may be made in the manner provided in the preceding section.''

About the foregoing statutory provisions the appellant makes no complaint, but he does attack Section 9248-a1 of the 1927 Code, which reads as follows:

''Should the proceeds of a sale under the preceding section of all of the stock of any stockholder be insufficient to satisfy his entire assessment liability he shall be personally liable for the deficiency, which may be collected by suit brought in the name of the bank against such stockholder.''

Said last-named statute was enacted March 13, 1925, by the Forty-First General Assembly, as shown by Chapter 181 of the acts thereof. Because Section 9248-a1, aforesaid, was not in existence when appellant purchased his stock in the appellee bank, he argues that his contract with the state and with the bank's other stockholders cannot be controlled by the new legislation. Under the contract arising through the old statutory provisions, appellant says that his stock could be appropriated for the purpose of paying the assessment, but that he was not personally liable therefor. See Leach v. Arthur Savings Bank, 203 Iowa 1052. Hence, because the new statute authorizes a personal liability, appellant contends that his contract aforesaid is changed and thereby impaired. Such impairment, appellant insists, is not avoided under the reserve power of the Iowa Constitution and the statutes enacted in connection therewith. That reserve power is set forth in Section 12, Article 8, of the Iowa Constitution, as follows:

''Subject to the provisions of this article, the General Assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two thirds of each branch of the General Assembly; and no exclusive privileges, except as in this article provided, shall ever be granted.''

Thereunder, the legislature of this state adopted the following statute, set forth as Section 1619 of the 1897 Code:

"The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at any time altered, abridged or set aside by law, and every franchise obtained, used or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good."

Those provisions contained in Section 1619 of the 1897 Code are substantially the same as the ones embodied in Section 1090 of the 1873 Code. So, when the appellee bank was incorporated, the foregoing constitutional and statutory provisions were operative. The principles announced in the well-known Dartmouth College Case, therefore, are not applicable to Iowa corporations within the realm of the foregoing reserve power. Appellant, however, attempts to avoid the reserve power doctrine by arguing that the assessment liability created by Section 9248-a1 is not within such reservation. To illustrate, appellant claims that there is a distinction between the assessment in question and an assessment imposed for liquidation purposes. A line of demarcation appears, appellant urges, because, on the one hand, the state granted the stockholder freedom from the corporate debts to the extent only of the assessment for liquidation purposes, while, on the other, the state granted the stockholder nothing, but imposed upon him a liability for the purpose of restoring the value of impaired stock. See Garey v. St. Joe Mining Company (Utah), 91 Pac. 369; Yoncalla State Bank v. Gemmill, 159 N. W. 798 (Minn.); County of San Mateo v. Southern Pacific, 13 Fed. 722; Central Pacific R. R. Co. v. Gallatin, 99 U. S. 700, 727.

Because the state granted a concession to the stockholder when it freed him from liability for the corporate debts, appellant concedes that such grant may be entirely withdrawn and the stockholder compelled to bear a greater liability for the debts. See Williams v. Nall (Ky.), 55 S. W. 706; Walsh v. Shanklin (Ky.), 31 L. R. A. (N. S.) 365, 102 S. W. 295; Whit-

man v. National Bank, 176 U. S. 559; Sherman v. Smith, 1 Black (U. S.), 587; Smathers v. Western Carolina Bank (N. C.), 47 S. E. 893; Sleeper v. Goodwin (Wis.), 31 N. W. 335; State v. Brown & Sharpe Mfg. Co. (R. I.), 25 Atl. 246; Pate v. Bank of Newton (Miss.), 77 So. 601; Enterprise Ditch Co. v. Moffit, 79 N. W. 560 (Nebr.) ; Norris Safe & Lock Co. v. Weaver (Ore.); 160 Pac. 807; Coffin v. Rich (Me.), 71 Am. Dec. 559.

Yet, because Section 9248-a1 of the 1927 Code does not withdraw a grant, but rather extends a liability, appellant maintains that the same is not within the reserve power above mentioned, and therefore falls within the principles announced in the famous Dartmouth College case. As to whether appellant is right about this, we do not now decide. His contention in this regard can in any event find support only in the proposition that before Section 9248-a1 of the 1927 Code was adopted, the stockholders' contract denied a personal liability for the assessment after his stock was applied thereon. Assuming, without deciding, that we determined that contention in accordance with appellant's claim in Leach v. Arthur Savings Bank, (203 Iowa 1052), supra, nevertheless appellant has not thereby shown that Section 9248-a1, above named, is unconstitutional and void.

Returning again to Section 9246 of the 1927 Code, it is found that the legislative provision there is:

"Should the capital stock of any state or savings bank become impaired by losses or otherwise, the superintendent of banking may require an assessment *upon the stockholders*" (the italics are ours).

The assessment plainly is not upon the stock, as such, but rather upon the stockholder personally. If, under Section 9246 above quoted, the assessment is upon appellant individually, then Section 9248-a1 in no way changes such individual liability. Originally, under the old statute, the assessment was against the stockholder and not against the stock. Likewise, under the amendment the assessment is still against the stockholder. According to the original statute, the stockholder was personally and primarily liable for the assessment, and Section 9248 and its predecessors had to do only with the remedy and nothing else. Then, assuming that the only remedy originally made for the collection of the assessment was to confiscate the stockholder's

stock, nevertheless, so far as the remedy was sufficient, the stockholder was personally liable for the assessment. This burden was cast upon the stockholder himself, even though the only remedy to enforce the obligation was by the sale of the stock. Consequently, appellant's obligation in the premises has not been increased. He was always obligated to pay the assessment. Of course, if he did not pay, the only remedy under the statute was to sell his stock; yet the obligation to pay was there just the same. Now, under the new legislation, the stockholder's liability has not been increased, but rather the remedy for enforcing that obligation has been changed. Were the remedy a part of appellant's contract, a change thereof would amount to an impairment. Barnitz v. Beverly, 163 U. S. 118; Conley v. Barton, 260 U. S. 677.

Obviously in the case at bar, however, we are not confronted with a case where the remedy became a part of the contractual obligation. There is not a syllable in the statutory contract which in any way indicates that the remedy is a part of the agreement. It was not said by the legislature that there could be no other or different remedy. Hence it was perfectly proper for the law-making body to adopt Section 9248-a1 of the 1927 Code, because such amendatory legislation pertained to the remedy only. The purpose of this legislative enactment was to afford a more appropriate remedy for an obligation already existing against appellant. Ever since becoming a stockholder of the appellee bank, he was obligated to pay any legal assessment made for the purpose of repairing the capital stock. This new legislation simply recognized that obligation and afforded a more complete remedy to enforce the same. No new obligation was created by the amendment, but rather the old was recognized and a better way to enforce it provided. Such action of the legislature in no way impairs the obligation of the contract. Conley v. Barton (260 U. S. 677), supra; Johnson v. Libby, 88 Atl. 647 (Me.); Brotherhood of American Yeomen v. Manz, 206 Pac. 403 (Ariz.); Barton v. Conley, 112 Atl. 670 (Me.); Perkins v. Coffin, 79 Atl. 1070 (Conn.); Waggoner v. Flack, 188 U. S. 595; Henley v. Myers, 215 U. S. 373; Hill v. Merchants' Mutual Insurance Co., 134 U. S. 515; Bernheimer v. Converse, 206 U. S. 516; Lynch v. Jacobsen, 184 Pac. 929 (Utah). See Barnitz v.

Beverly (163 U. S. 118), supra. A few brief quotations from some of the foregoing cases will elucidate the thought.

It was said in Bernheimer v. Converse, (206 U. S. 516), supra:

"There is a broad distinction between laws impairing the obligation of contracts and those which simply undertake to give a more efficient remedy to enforce a contract already made."

Again in Henley v. Myers (215 U. S. 373), supra, it is declared:

"Equally without merit is the contention that the statute of 1899 impaired the obligations of the stockholder's contract, in that it substituted for individual actions against them a suit in equity by a receiver appointed after judgment against the corporation. In becoming stockholders, the defendants did not acquire a vested right in any particular mode of procedure adopted for the purpose of enforcing their liability as stockholders. It is a well-established doctrine that mere methods of procedure in actions on contract, that do not affect the substantial rights of parties, are always within the control of the state. It is to be assumed that parties make their contracts with reference to the existence of such power in the state."

Likewise in Waggoner v. Flack, (188 U. S. 595), supra, similar language is used as follows:

"*There was no promise or contract expressed in the statute that the state would not enlarge the remedy or grant another on account of the purchaser's violation of his contract, and we think no such contract is to be implied.* (The italics are ours). A purchaser of lands at the time Phillips purchased had no right to assume that the state would not alter the law in the future so far as to give it another and better or a quicker remedy for a violation of his contract by the purchaser than existed at the time the purchase was made. To enact laws providing remedies for a violation of contracts, to alter or enlarge those remedies from time to time as to the legislature may seem appropriate, is an exercise of sovereignty, and it cannot be supposed that the state in a case like this, contracts, in a public act of its legislature, to limit its power in the future, even if it could do so, with or without consideration, unless the language

of the act is so absolutely plain and unambiguous as to leave no room for doubt that its true meaning amounts to a contract by it to part with its power to increase the effectiveness of existing remedies as against those who purchase lands while the act remains alive. No such language is to be found in the act in question, and none ought to be implied.''

Also the Arizona Court, in Brotherhood of American Yeomen v. Manz (206 Pac. 403), supra, reading on page 405, laid down a similar doctrine in the following language:

''We understand the rule to be that parties have no vested right in particular remedies or modes of procedure, and that legislatures may change existing remedies or prescribe new modes of procedure without impairing the obligation of contracts, provided an efficacious remedy remains for its enforcement.''

To the same effect is the following pronouncement in Johnson v. Libby (88 Atl. 647), supra, reading on page 649:

''Its (the amendment to a statute) only purpose and effect was to provide a different remedy, a different course of procedure, by which the shareholders' liability could be enforced. The legislature has power to modify or change a remedy, provided no substantial right is thereby impaired. *And a shareholder in a corporation has no vested right in a particular remedy by which his liability as such may be enforced.* (The italics are ours). A change of remedy, whereby no substantial right is affected, is not obnoxious to the fundamental law which forbids the impairment of contracts.''

Thus it appears that the Supreme Court of the United States on many occasions has emphatically declared that a stockholder in a corporation ordinarily has no vested right in a remedy and therefore such remedy may be changed without impairing the obligation of contract. Not only has that doctrine been announced by the Supreme Court of the United States, but likewise it has been declared by practically every state in the union. As before seen, appellant's contract in the case at bar did not give him a vested right in any particular remedy. There is no language in the statutes under consideration which indicates in any way that the remedy should not be changed. Ac-

cording to the statute, the assessment in question is against the stockholder himself. That is so because of the express language used by the law-making power, as will be seen by referring to the statutes above-quoted.

Conceding, without deciding, that under the original statute, the remedy was limited to the confiscation of the stock, yet that remedy, such as it was, arose for the purpose of enforcing a personal liability against the stockholder. Resultantly the new legislation also increases the remedy for the purpose of enforcing the same personal liability against the stockholder. Therefore, Section 9248-a1 of the 1927 Code is not unconstitutional and void for it does not impair the obligation of a contract under the state and federal constitution.

The judgment and decree of the district court should be, and hereby is, affirmed.—Affirmed.

Faville, C. J., Stevens, Morling, and Wagner, JJ., concur.

Evans, Albert and Grimm, JJ., dissenting as follows:

We disagree with the majority opinion.

The appellee was incorporated as a savings bank, under the laws of this state, May 6, 1891. Twenty years later, to wit, May 11, 1911, the bank was reincorporated. In February, 1920, the capital stock was increased from $30,000 to $50,000. The appellant was the owner of 26 shares of stock in said bank. Ten of said shares were acquired about the time of the original incorporation, to wit, May 18, 1891. Ten more shares were acquired April 16, 1906. Six and one-sixth shares were acquired February 14, 1917. The certificate therefor was surrendered, and a new certificate for six shares, representing, however, the same stock, was issued June 8, 1925. On February 15, 1927, the capital stock of said bank was impaired to the extent of 100 per cent thereof, and on said date the superintendent of banking of the state determined that said capital stock was so impaired and ordered the board of directors of said bank to collect an assessment against the stock of said bank in the amount of 100 per cent. The proper proceedings were taken, notices were given of the assessment, and on or about the 4th day of October, 1927, due notice of the time and place of sale of appellant's stock was had, and on the 17th day of November, 1927, appellant's said shares of stock were duly offered for sale

at public auction and were sold by the appellee for the sum of $1 per share, or a total of $26. This action is brought to recover from the appellant the deficiency between the amount of said assessment and the said $26, to wit, the sum of $2,574. It is conceded by all parties that the said assessment is predicated solely on the provisions of Chapter 181 of the Acts of the Forty-first General Assembly, which became effective March 14, 1925, and which is now embodied in Section 9248-a1 of the Code of 1927. No question is raised but that the stock of the appellant was subject to an assessment by reason of impairment of the capital stock of the appellee bank. Chapter 29 of the Acts of the Twenty-fifth General Assembly, providing for such assessment, became effective May 6, 1894. This statute was carried into the Code of 1897 in Sections 1878, 1879, and 1880. Said sections are substantially embodied in the Code of 1927 in Sections 9246-9250. These several statutes, as they existed prior to the enactment of Chapter 181 of the Acts of the Forty-first General Assembly, provided for an assessment to be made against shareholders of a savings bank to replace the impaired capital of such a bank. The sole provision, however, in the statutes as they then existed, for the enforcement of such an assessment, was that a sufficient amount of the capital stock held by a stockholder could be sold at public auction after proper notice to satisfy said assessment. It was under these statutory provisions that the appellant held his stock prior to the enactment of Chapter 181 of the Acts of the Forty-first General Assembly. Said statute placed a new liability upon the holder of said stock in the event of an assessment to replace impaired capital. Not only could the stock of the stockholder be sold to satisfy such an assessment, but a personal liability was created for the balance of said assessment above the amount for which the stock sold. Chapter 181 amended the existing statute by adding thereto the following:

"Should the proceeds of a sale hereunder of all of the stock of any stockholder be insufficient to satisfy his entire assessment liability he *shall be personally liable* for the deficiency, which may be collected by suit brought in the name of the bank against such stockholder."

At the time the appellant became the owner of his shares

of stock the then existing law imposed no personal liability on the stockholder to replace the impaired capital of such a bank. Leach v. Arthur Savings Bank, 203 Iowa 1052.

Preliminary to our discussion we may state briefly the nature and scope of the questions in controversy.

The contention of the defendant-stockholder presents two alternatives:

(1) That Chapter 181 does not in terms purport to be retroactive or to apply to contracts existing prior to its enactment; that it is presumptively prospective and not retroactive unless the contrary appear from its express terms.

(2) That if it be held that such chapter does by its terms purport to apply to all existing stockholders, including the defendant as a prior existing stockholder, then the statute is unconstitutional in that it impairs the obligation of a contract.

For the plaintiff-appellee, it is contended that said statute does purport to apply to all existing stockholders; that it is not unconstitutional by reason of its application to existing stockholders because the liability imposed upon the defendant by the amending Chapter 181 is precisely the same as that already existing under the provisions of Sections 9246 and 9248 and that no additional burden is therefore imposed upon the defendant; that the same is not unconstitutional for the further reason that the amending chapter was enacted pursuant to power reserved by the Legislature under the provisions of Section 8376; that the enforcement of the assessment pursuant to Chapter 181 is the fair equivalent of enforcing the provisions of Section 9251, which imposes a superadded liability upon stockholders for the payment of corporate debts; that the enforcement of one of these remedies is indirectly an enforcement of the other. The foregoing indicates the general field of debate.

I. Appellant urges that we first determine categorically, upon the interpretation of the language of Chapter 181, whether it purports to be prospective only or retroactive also. If by its terms it be deemed to be only prospective in purpose, then the question of its constitutionality is thereby eliminated and the appellant is entitled to prevail upon the face of the statute. The problem presented, however, is not so simple as the appellant thus makes it. The question of interpretation is interlocked with the question of constitutionality. The volume of

the argument is upon that question. So far as the mere terms of the statute are concerned, they are quite non-committal. They might be applied with equal plausibility to a retroactive statute as to a prospective one. In such a case, the presumption would favor the *prospective* construction. On the other hand this chapter is a mere amendment of an existing statute. This would invite a construction that would give the amendment as broad an application as the existing statute itself. If a *retroactive* interpretation of the statute would render it unconstitutional, then that fact would of itself become a controlling reason why such interpretation should not be adopted. In that sense the question of constitutionality and the question of interpretation become parts of the same thing,—the one being dependent upon the other. We shall therefore first consider the question of constitutionality on the assumption that the statute by its terms purports to be retroactive in its operation and to apply to all existing stockholders regardless of the fact that they had acquired their rights as such stockholders prior to the enactment of Chapter 181.

The relation of a stockholder to his corporation is contractual. His legal status is succinctly stated in 2 Cook on Corporations (8th Ed.) paragraph 492 as follows:

"The charter of a corporation having a capital stock is a contract between three parties, and forms the basis of three distinct contracts. The charter is a contract between the state and the corporation; second, it is a contract between the corporation and the stockholders; third, it is a contract between the stockholders and the state."

To the foregoing might be added a fourth aspect, viz.: that it is a contract as between the stockholders themselves. The stockholder becomes a party to the contract by his purchase of the stock. The relation thus created is purely voluntary on his part. His volition being exercised, he becomes bound to all the obligations expressed in the contract and imposed upon him by existing law. On the other hand he becomes entitled to all the benefits of the contract whether they exist at present or accrue in the future. Generally speaking his obligation thus assumed may not be-enlarged against his consent. The defendant herein had acquired all his stock in the corporation long

prior to the enactment of Chapter 181 under consideration. Under his contract he bound himself to pay to the corporation the full par value of the stock purchased. In other words he agreed to devote to the enterprise the amount of capital specified in his purchase. By virtue of the existing statute 9248 he is deemed to have consented also to the sale of his stock by the corporation in the event it became necessary to do so in order to restore any impairment of capital. This comprises his full undertaking as between him and his corporation. We need not here consider the question of his liability to creditors under Section 9251. His relation to the corporation creditors is not involved herein.

In St. John v. Building & Loan Ass'n., 136 Iowa 448, we said:

"It will be noted that the act itself does not attempt to change the contracts of members, but it does provide that, if the association failed to comply therewith on or before July 15, 1900, its authority to do business should cease, and its affairs should be wound up, and settlements made with all members according to the provisions of the act. Defendant then had the option of complying with the law and adjusting its outstanding contracts on the basis outlined in the act, or of going out of business and settling with its members upon the basis fixed in section 7 of the act (Acts 28th G. A., c. 69). It had no constitutional or other right to continue in business indefinitely or for any other time than the Legislature might see fit to permit. This is a fundamental principle of corporate law under the reserved power now generally given to the Legislature. Bishop v. Brainerd, 28 Conn. 289; In re Brooklyn R. R., 72 N. Y. 245; (Id.) 75 N. Y. 335, (Id.) 81 N. Y. 69. *Of course, the relation between the corporation and its stockholders cannot be changed or disturbed against their will.* All that the Legislature may do in this respect is to grant the power, and then it is for the corporation to accept or not as it pleases. Kenosha Co. v. Marsh, 17 Wis. 13." (The italics are ours.)

As bearing on the question, see also, Garey v. St. Joe Mining Co., 32 Utah, 497, 91 Pac. 369, 12 L. R. A. (N. S.) 554; Union Pacific R. R. Co. v. United States, 99 U. S. 700, 25 L. Ed. 496; Central Pac. R. R. Co. v. Gallatin, 99 U. S. 700, 727, 25 L. Ed.

504; Hawthorne v. Calef, 2 Wall. 10, 17 L. Ed. 776; New Orleans, J. & G. N. R. Co. v. Harris, 27 Miss. 517; Corning v. McCullough, 1 N. Y. 47, 49 Am. Dec. 287; Coffin v. Rich, 45 Me. 507, 71 Am. Dec. 559; Fairchild v. Masonic Hall Ass'n., 71 Mo. 526.

The case here quoted from was one wherein the stockholder was plaintiff and the corporation, defendant. The amended legislation involved in that case was directed against certain practices of the corporation and these were forbidden by the statute. The opinion recognizes the right of the corporation as well as of the stockholder to be immune from any impairment of contract obligations as between them, but it holds also that the corporation itself was subject to regulation by the Legislature and that it had the option to conform to such regulations or to cease its corporate operations; that by the amendment of its charter in conformity to the statute it exercised its option and elected to conform to the amended statute.

In Yoncalla State Bank v. Gemmil, 159 N. W. 798, (Minn.) it was said:

"But it is one thing to impose burdens upon the property voluntarily placed in a banking business by a stockholder of a bank, and quite another to impose a *personal liability* upon him, thereby subjecting property which he has not devoted to banking business to be taken from him to pay creditors of the bank."

We are confining our discussion at this point to the narrow question whether Chapter 181 if applied retroactively imposed a burden upon the defendant additional to that previously existing under his contract. We deem it clear that it did impose such additional burden. If so, then it must be deemed an impairment of the obligations of defendant's contract unless it shall appear that the Legislature acted within its so-called reserve power as defined in Section 12, Article 8, of the Constitution and in Section 8376 of the Code. The question of such reserve power inheres necessarily in the question of constitutionality and we proceed to its consideration.

II. Section 12, Article 8, of the Constitution of Iowa is as follows:

"Subject to the provisions of this article, the General As-

sembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two thirds of each branch of the General Assembly; and no exclusive privileges, except as in this article provided, shall ever be granted.''

Pursuant to this constitutional provision the Legislature enacted Section 8376 of the present Code (Section 1619, Code, 1897) as follows:

''The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at any time altered, abridged or set aside by law, and every franchise obtained, used, or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good.''

This section is to be read and construed in the light of the constitutional provision, though its terms are not identical with the terms of the constitutional provision. But inasmuch as the power to enact Section 8376 was conferred by Section 12, Article 8, and not otherwise, the two sections may be well construed as identical in legal effect. The appellee contends for a very broad construction and application of Section 8376 and puts especial emphasis upon terms that are not contained in the constitutional provision. A similar constitutional provision substantially identical in effect has obtained in many, if not in all, of our states. The courts of the various states, as well as the Supreme Court of the United States, are in substantial harmony in the interpretation which is put upon such provision. There is substantial unanimity in the decisions that the reserve power thus contended for is a power of repeal of legislation relating to corporations and a power of withdrawal of privileges and immunities previously granted. It is not an affirmative power to impose new and additional obligations or burdens upon the corporation; and especially it is not an affirmative power to add new obligations or burdens to the existing contracts of the stockholders. The limitation upon the reserve power is sum-

marized in Cook on Corporations (above cited), Section 501, as follows:

"But the power to make a new contract for the stockholders is not thereby given to the legislature. The legislature may repeal the charter *but cannot force the stockholder into a contract against his will.*"

In County of San Mateo v. Southern Pacific, 13 Fed., 722, such power was defined by Justice Field as follows:

"*By the reservation clause it retains power only over that which it grants;* it does not grant the rails on the road; it does not grant the depots along-side of it; it does not grant the cars on the track, nor the engines which move them, and over them it can exercise no power except such as may be exercised through its control over the franchise, and such as may be exercised with reference to all property used by carriers for the public. The reservation of power over the franchise,—*that is, over that which is granted,*—makes its grant a conditional or revocable contract, whose obligation is not impaired by its revocation or change."

From Central Pacific R. R. Co. v. Gallatin, 99 U. S., 727, 758 (25 L. Ed. 504-515), we quote the following:

"The object of a reservation of this kind in acts of incorporation is to insure to the government control over corporate franchises, rights and privileges, which, in its sovereign or legislative capacity, it may call into existence, *not to interfere with contracts which the corporation created by it will make.* Such is the purport of our language in Tomlinson v. Jessup, where we state the object of the reservation to be 'to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise, if the public interest should at any time require such interference,' and that 'the reservation affects the entire relation between the state and corporation, and places under legislative control all rights, privileges and immunities derived by its charter directly from the state.' 15 Wall. 454. The same thing we repeated with greater distinctness in Railroad Company v. Maine, where we said that by the reservation the state retained the power to alter the act incorporating the company, in all particulars constituting the

grant to it of corporate rights, privileges and immunities; and that 'the existence of the corporation, and its franchises and immunities, derived directly from the state, were thus kept under its control.' But we added, that *rights and interests acquired by the company, not constituting a part of the contract of incorporation, stand upon a different footing.'* 96 U. S. 499.''

In 1 Rose's Notes on U. S. Reports (1899), p. 942, Mr. Rose summarizes the decisions of the court on this question as follows:

''In many of the cases, the purpose of the legislation attempted under the reserve power is the taking away of something—whether, a franchise, power, privilege, or immunity—which the corporation has hitherto enjoyed * * * Under the reserve power, the state * * * *may take or it may modify, that which it has granted. But that is all.* Property acquired during the exercise of these powers it may not divest, *contracts already executed* it may not annul, acts lawful when committed it may not afterwards punish, taxes thus remitted it may not afterwards exact: the legislation thus attempted *must be prospective and not retrospective in its operation.* This principle has been very clearly stated by several of the most eminent of the members of the Supreme Court of the United States.''

The standard text books are all in accord along the same line. It is to be noted also that the reservation of such power to the Legislature is one impliedly hostile to the corporation.

Chapter 181 under consideration does not purport to repeal or to withdraw any privilege or immunity from the corporation. It does not purport to repeal or to withdraw any privilege or immunity from the stockholders. On the contrary it purports impliedly at least to confirm all previous legislation, and to add thereto an affirmative obligation of personal liability of the stockholder for the restoration of impaired capital. Prior to this legislation the stockholder was under such obligation only as he had voluntarily assumed. By virtue of the legislation, if valid, an obligation was imposed upon him against his consent. We deem it clear that such legislation was not within the purview of the reserve power.

Appellee cites to us authorities wherein legislation was sustained which purported to impose liability upon stockholders for the debts of the corporation notwithstanding that such stock

214

holders were in the first instance immune therefrom. The argument in support of such holding is that the immunity from liability for the debts of a corporation is a privilege conferred by statute upon the stockholders and that under the reserve power it may be repealed or withdrawn. See Anderson v. The Commonwealth, 18 Grattan (58 Va.), 295. For the purpose of this case we shall assume such to be the law. The argument is wholly consistent with our foregoing discussion. Liability of a stockholder for the debts of his corporation occupies a different field from that of the liability of one stockholder to another, or to the corporation. The latter liability is created by the mutual contract of the parties and not otherwise. Whether under our statute the qualified immunity of a stockholder from the payment of debts of the corporation is statutory rather than contractual, we do not now consider.

We note the contention of appellee that Chapter 181 added nothing to the law as it already existed. It is argued that the purported liability created by this chapter already existed under the express terms of Sections 9246 and 9248. The point is without merit. Leach v. Arthur Savings Bank, 203 Iowa 1052.

It is further contended by appellee that this action is maintainable under the provisions of Sections 9251 and 9252; that the stockholders are liable in any event for the debts of the corporation in case of insolvency; that in such case this defendant would be liable for a 100% assessment under the provisions of said Sections 9251 and 9252; that the same end will be accomplished by the enforcing of the 100% assessment in the instant case. The argument is wholly untenable. No liability of the stockholder arises under Section 9251 until the corporation becomes insolvent. If the liability should accrue, the corporation could not sue for it. Its very insolvency would preclude it from maintaining an action against anyone. Nor could any other plaintiff sue the defendant separately upon such liability. Section 9253 provides the remedy pursuant to Sections 9251 and 9252. Separate suits by separate creditors against separate stockholders are not maintainable. All persons interested in the fund must be impleaded in the action. Section 9253. Platner v. Hughes, 200 Iowa 1363. The liability of a stockholder under Sections 9251 and 9252 is not affected by the question of his liability under Sections 9246 and 9248. The assessment

provided for in 9248 is for the benefit of the corporation as a going concern. The proceeds of the assessment are invested in its assets and are subject to the same loss and to the same management by corporate officials as any other asset. The statute provides for no finality in such assessment. If the proceeds be lost in the further course of business, the same statute is open for the purpose of another assessment of the same kind. The statute' in terms provides no limit upon the repetition of assessments against the stockholder to restore impaired capital. It does not in terms give the minority stockholder any right of defense against any number of assessments. This record discloses that this is not the first assessment of this kind that has been made against the stockholders of this bank. A 50% assessment was made some years previously. The brief of appellant asserts that another like assessment of 100% was made in 1929 while this action has been pending. This statement is outside of the record and we give it no consideration. It may properly serve the function of a hypothetical case as an illustration of what may be done under Chapter 181 if we sustain the contention of appellees. Restoration assessments may be poured into this bank indefinitely by the majority control, and no payment thereof by the minority stockholder will enable him to escape from the thraldom of his membership. The receptacle into which the successive assessments may be shoveled, is forever receptive, like a wagon-box without an endgate.

For further authorities in support of our holding herein reference may be had to the following: Noble State Bank v. Haskell, 219 U. S. 104, 55 L. Ed. 112; Garey v. St. Joe Mining Co. (Utah), 91 Pac. 369; Sherman v. Smith, 1 Black (U. S.) 587; Matter of Lee's Bank, 21 N. Y. 9; Barnes v. Arnold, 51 N. Y. Supp. 1109; Barnes v. Trevor, 61 N. Y. Supp. 85; 14 C. J. 974; Shields v. Ohio, 95 U. S. 319, 324; Chicago, M. & St. P. R. Co. v. Wisconsin, 238 U. S. 491, 59 L. Ed. 1423; Zabriskie v. Hackensack & N. Y. R. Co., 18 N. J. Eq. 178, 192, 90 Am: Dec. 617; People v. Beakes Dairy Co., 222 N. Y. 416, 119 N. E. 115, 3 A. L. R. 1260; Commonwealth v. Essex Co., 13 Gray (Mass.) 239, 253; People v. O'Brien, 111 N. Y. 1, 52, 18 N. E. 692, 704 (2 L. R. A, 255, 7 Am. St. Rep. 684); In re Mt. Sinai Hospital, 250 N. Y. 103, 164 N. E. 871, 874; Superior Water, L. & P. Co. v. Superior, 263 U. S. 125, 68 L. Ed. 204; Macon

Gas Co. v. Richter, 143 Ga. 397, 85 S. E. 112; McKenzie v. Guaranteed Bond & Mortgage Co. (Ga.), 147 S. E. 102, 105; 12 C. J. 1027, 14 C. J. 187, 189; Weede v. Emma Copper Co. (Utah), 200 Pac. 517; In re Opinion of Justices (Mass.), 166 N. E. 401.

III.   There is another feature of this legislation, which tends to nullify its application to the case before us.   The original legislation providing for assessment of stockholders for the purpose of curing impairment of capital appeared as Sections 1878 and 1879 of the Code of 1897.  This original legislation authorized a sale of the stock of any stockholder who refused to pay his assessment.   This legislation was later amended by Chapter 181, 41 G. A., which we have set forth above.

In the case before us, and pursuant to this amendment, the plaintiff, or its directors, caused the stock of the defendant to be sold and the same was purchased for the nominal sum of $1.00 per share.   This left a deficiency of $99.00 and this suit is brought against the original stockholder to recover the $99.00. It is to be noted that this amendment carries a certain quality of self-contradiction and inconsistency and of an arbitrary imposition of affirmative personal liability upon the original stockholder.   This affirmative assertion of personal liability, as against such stockholder, is in no sense an exercise of a power *reserved* by the Legislature in the grant of the original franchise.   If this legislation had been in effect at the time of the granting of the original franchise, it could become personally obligatory upon this defendant only by his consent to become a stockholder upon the conditions thus imposed.   To apply this legislation to him after he had become a stockholder, is to impose upon him arbitrarily a personal liability which could not have been originally imposed upon him without his consent.   The original statute authorized a sale of the stock.   Such sale would necessarily oust the stockholder.   The purchaser would become the new stockholder.   The interest of the first stockholder would be extinguished.   As long as he remained a stockholder, his contribution to the restoration of the value of his stock operated presumptively to his own interest.   The stock and his contribution thereto still belonged to him.   But if the stock be sold, then the purchaser necessarily steps into the stockholder's shoes and becomes thereafter the beneficial owner of all contributions,

which may be made to the valuation of such stock. Having elected to buy such stock and to become the beneficiary of all benefits to accrue to the holder of such stock, why should it be deemed a duty of the old stockholder to contribute to the new one an assessment ninety-nine times greater than the value paid by the new stockholder? The corporation being solvent and a going concern, the payment of this assessment by the old stockholder operates exclusively to the benefit of the new one. If the corporation were insolvent and a closed concern, a different question would be presented. In such event the old stockholder would be liable for a 100% assessment under his original franchise. But his liability would not be to the corporation, nor to the new stockholder, but would be a liability to the creditors to the extent of their loss and no more. When this suit was brought against this defendant, he was no longer a stockholder. The corporation had no jurisdiction over him as such. He had been wholly ousted. In order to sustain the right of the corporation to maintain this action, we must hold that the Legislature has power to charge an affirmative personal liability against a former stockholder, not for the purpose of liquidation, not for the purpose of paying the claims of creditors, not for the purpose of repairing any wrong done by himself, but for the sole purpose of restoring his former stock to a 100% valuation in the hands of the purchaser, who had bought it for its then existing nominal value of $1.00. Such a proceeding amounts to a mere taking of the funds of an individual and donating the same to another individual. In this case the Banking Superintendent declared an impairment of 100% of the capital. He did not, however, deem the bank insolvent, but continued it as a going concern. It is still a going concern. The payment of this assessment by this defendant will necessarily operate as a gift of $99.00 per share to the new stockholder. We do not think that it is within the legislative function to confer such a power upon any agency; nor indeed do we think that the Legislature itself could exercise such a power.

In support of the foregoing discussion, the following authorities will be found pertinent: Garey v. St. Joe Mining Co. (Utah), 91 Pac. 369.

"Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration. Beyond the sphere of

the reserved powers, the vested rights of property of corporations, in such cases, are surrounded by the same sanctions and are as inviolable as in other cases." Shields v. Ohio, 95 U. S. 319; Chicago, M. & St. P. R. Co. v. Wisconsin, 238 U. S. 491, 59 Law. Ed. 1423.

"The reserved right to amend a corporate charter 'does not confer mere arbitrary power, and cannot be so exercised as to violate fundamental principles of justice by * * * taking of property without due process of law.' " Chicago, M. & St. P. R. Co. v. Wisconsin, supra.

"Amendments of a charter of a corporation which are vital, radical and fundamental in their nature cannot be adopted without the unanimous consent of the stockholder." McKenzie v. Guaranteed Bond & Mtg. Co. (Ga.), 147 S. E. 102.

"Increasing the amount of the common capital stock in a corporation in excess of the amount authorized by the charter is a vital and fundamental change of the original contract and requires the unanimous consent of all the stockholders." Macon Gas Co. v. Richter, 143 Ga. 397, 85 S. E. 112.

A provision for an assessment upon stock to pay debts is entirely different from one imposing a personal liability upon the stockholder. The one may be good when the other is not. Weede v. Emma Copper Co. (Utah), 200 Pac. 517.

See also authorities collated in 12 C. J. 1027 and 14 C. J. 187.

For the foregoing reasons, we are of the opinion that the judgment below should be reversed.